644 A.2d 753

**Jacquelwyn S. RESSLER, Appellee,**

v.

**Jay L. RESSLER, Appellant.**

Superior Court of Pennsylvania.

Argued April 14, 1994.

Filed July 6, 1994.

Andrew H. Appel, Lancaster, for appellant.

Gary G. Krafft, Lancaster, for appellee.

Before TAMILIA, SAYLOR and HOFFMAN, JJ.

SAYLOR, Judge.

Appellant, Jay L. Ressler, appeals from the order of the Court of Common Pleas of Lancaster County modifying the recommendations of the special divorce master.

Jay L. Ressler (Husband) and Jacquelwyn Ressler (Wife) were married on November 30, 1957 and separated on July 17, 1990. This was both parties' first marriage and their three children are emancipated. Husband is 60 years old and was employed at the Armstrong World Industries floor plant during the entire course of the parties' marriage. In 1990, Husband's last full year of employment, he earned $36,484. Approximately four months after the parties separated, Husband's position at Armstrong was terminated and he received a lump severance payment of $69,000. At the date of termination, Husband was eligible for retirement and currently receives $1,824 per month in retirement benefits, which will be reduced to $1,101 per month in 1996 when Husband's social security benefits become available. Any change in Husband's employment status, however, will not effect his retirement benefits. Husband is not currently employed, but does volunteer for charity.

Wife is 57 years old and, although in good physical health, has suffered from depression since 1968 which requires her to take medication. During the marriage, Wife performed household chores which included caring for the children, cooking, and cleaning. In 1986, Wife obtained employment outside the home and has been employed at a variety of different waitressing, babysitting, or housecleaning jobs. She has seldom remained with the same employer for over six months and has never remained with the same employer for over a year. The highest wage earned by Wife during her employ-

ment was $5.00 per hour. In 1991, Wife's total wages were $7,585.

On December 30, 1988, Wife filed a divorce complaint on the grounds of irretrievable breakdown and indignities. The special master filed his report and recommendation on November 19, 1992 and Wife filed exceptions to the report. On September 20, 1993, the trial court entered an order modifying the master's recommendations. The trial court held the following: Husband's lump sum severance payment of $69,000 should be considered a significant factor in the equitable distribution of the parties' marital property; Wife should receive alimony of $110 per week and the sum of $500 per month from Husband's retirement plan; and Wife should be awarded $5,600 for the fair rental value of the marital home. Husband then filed this timely appeal.

Husband raises the following issues on appeal: 1) Whether the trial court abused its discretion in considering Husband's lump sum severance payment a significant factor in determining equitable distribution; 2) Whether the trial court abused its discretion in increasing the master's $300 per month recommended distribution of retirement income to $500; 3) Whether the trial court abused its discretion by awarding Wife the fair rental value of the marital residence; 4) Whether the trial court abused its discretion in awarding Wife alimony.

"Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." *Harasym v. Harasym*, 418 Pa.Super. 486, 494, 614 A.2d 742, 746 (1992). "An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." *Zollars v. Zollars*, 397 Pa.Super. 204, 208, 579 A.2d 1328, 1330 (1990) *alloc. den.*, 527 Pa. 603, 589 A.2d 693. "An award of alimony, counsel fees, and property distribution are within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion." *Harasym v. Harasym, supra*, 418 Pa.Super. at 492, 614 A.2d at 745.

■ Husband first contends that the trial court abused its discretion by considering his severance payment as a significant factor in the equitable distribution scheme when Husband was not notified of either his termination or his severance payment until four months after the parties separated. In *LaBuda v. LaBuda,* 349 Pa.Super. 524, 503 A.2d 971 (1986) *alloc. den.,* 514 Pa. 648, 524 A.2d 494, the Superior Court held that early retirement incentives received by husband after separation were not marital property because husband's right to receive these benefits did not accrue prior to the parties separation; thus wife could not have expected to enjoy these payments since neither party had any idea that husband would receive the payments until after the parties separated.

Cases in other jurisdictions which have considered the issue of severance pay have also dealt only with the issue of whether or not severance pay is marital property subject to equitable distribution. For example, in *Ryan v. Ryan,* 261 N.J.Super. 689, 619 A.2d 692 (Ch.Div.1992), wife sought equitable distribution of severance pay received by the husband as a result of his employment at IBM. Husband asserted that because the severance payment was received over two and a half years after the complaint for divorce was filed, the money was not subject to equitable distribution. The New Jersey Superior Court stated that

> The crucial issue here is the determination of the nature of the severance pay. If the payment was intended to replace post-marital earnings, it would warrant a separate property characterization. If, however, it has some other purpose relating to compensation for work performed during the marriage, it would qualify as marital property for the purpose of equitable distribution, regardless of the timing of the divorce complaint.

261 N.J.Super. at 696, 619 A.2d at 695.

The court concluded that the severance payment was, in fact, compensation for past labor and not a replacement for future earnings, because the amount was based on the husband's past services to IBM; thus, the husband's right to receive severance pay was legally and beneficially acquired during the

marriage and as such the payment must be considered as a marital asset for the purpose of equitable distribution.

In *In re Holmes*, 841 P.2d 388 (Colo.Ct.App.1992), at the time of the divorce the husband had not yet received notice of termination. The trial court held that the severance pay option was not deferred compensation for services that had been performed by the husband during the marriage. It also found that although the plan was enacted during the marriage and would be valued based on the length of service performed during the marriage, the right to such severance was dependent on receiving a company termination notice. The Colorado Court of Appeals agreed, noting that any severance payments eventually received would be a replacement for "expected loss of income," rather than "deferred compensation for services rendered during marriage." Accordingly, the severance pay, unlike retirement pensions, was nonmarital property subject to division.

Additionally, in *Franklin v. Franklin*, 116 N.M. 11, 859 P.2d 479 (1993) relied upon by Husband, the New Mexico Court of Appeals held that husband's severance payment which was received after the divorce was Husband's sole and separate property to which wife had no claim.

In this case, however, we need not reach this issue since the trial court determined that Husband's severance payment was non-marital property [1], the termination of Husband's employment and the distribution of the severance pay having occurred four months after the parties' separation, and Husband does not challenge this ruling on appeal. The only issue before us, therefore, is whether the severance payment is a factor which the trial court could properly consider in effecting equitable distribution of the parties' marital property.

The factors which are to be considered by a trial court in making equitable distribution are set forth in Section 3502 of the Divorce Code, 23 Pa.C.S.A. § 3502(a)(1)–(11):

1. The Pennsylvania Divorce Code defines marital property as "all property acquired by either party during the marriage ... except (4) Property acquired after final separation until the date of divorce ..." 23 Pa.C.S.A. § 3501(a) and (a)(4).

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party, including Federal, State and local tax ramifications, at the time the division of property is to become effective.

(11) Whether the party will be serving as the custodian of any dependent minor children.

This list of relevant factors is not exhaustive, however:

[T]here is no simple formula by which to divide marital property. The method of distribution derives from the facts of the individual case. The list of factors of 401(d)[2] serves as a guideline for consideration, although the list is neither exhaustive nor specific as to the weight to be given the various factors. Thus, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions.

**2.** Section 401(d) of the Divorce Code was the predecessor to current Section 3502 and the list of factors is substantially the same in both.

*Diamond v. Diamond,* 360 Pa.Super. 101, 114, 519 A.2d 1012, 1018 (1987), *alloc. den.,* 516 Pa. 633, 533 A.2d 92 (1987) (Citation omitted).

Husband argues that because the severance payment is not marital property it should not have been considered by the trial court as a factor in determining equitable distribution. We disagree. Section 3502 contemplates the court's consideration of nonmarital assets available to the parties at the point in time at which the court is structuring an equitable scheme of distribution. For example, Section 3502 directs a trial court to take into account "the opportunity of each party for future acquisitions of capital assets and income"; "the sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits"; "the value of property set apart to each party"; and *"the economic circumstances of each party . . . at the time the division of property is to become effective."* 23 Pa.C.S.A. § 3502(5)(6)(8)(10) (Emphasis added).

As our Supreme Court observed in *Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534 (1988):

> The statute . . . sets forth a number of factors which focus on the *present* needs and financial situations of the parties, including their "amount and sources of income," "employability," "estate, liabilities and needs," chances for "future acquisitions of capital assets and income," "sources of income", the *"value of the property set apart"* as *non-marital property,* "standard of living," and the "economic circumstances of each party *at the time the division of property is to become effective."* (Emphasis added)

*Id.* at 382, 543 A.2d at 536.

Although the severance payment which was received by Husband four months after the separation was nonmarital property, it was clearly an asset possessed by Husband at the time of the court-ordered equitable distribution even if characterized as a replacement of future earnings. Thus, it was not an abuse of discretion for the trial court to give some weight to this asset in its calculations.

■ Husband secondly contends that the trial court abused its discretion by increasing the monthly amount which was to be distributed to Wife from Husband's retirement benefits from the $300 amount recommended by the master to the sum of $500. Both the master and the trial court found that Wife does not have the earning capacity and job skills of Husband and has a history of psychiatric problems. In his report, the master stated that Wife "is in a desperate financial situation with little income, almost no job skills, no retirement, no health care, little savings, no assets of her own other than savings, all at age 56." On the basis of these facts, the trial court did not abuse its discretion in awarding Wife $500 per month from Husband's retirement benefits.

■ Husband next argues that the trial court abused its discretion in awarding Wife $5,600.00 as the fair rental value for the parties' marital residence during the time that she was out of possession. Husband contends that his payment of the mortgage on the residence during this period of time served to offset Wife's entitlement to a rental credit.

*Trembach v. Trembach,* 419 Pa.Super. 80, 88, 615 A.2d 33, 37 (1992) set forth the proper procedure to follow in calculating rental credit:

> First, the general rule is that the dispossessed party is entitled to a credit for the fair rental value of jointly held marital property against a party in possession of that property, provided there are no equitable defenses to the credit. Second, the rental credit is based upon, and therefore limited by, the extent of the dispossessed party's interest in the property. Generally, in regard to the marital home, the parties' have an equal one-half interest in the marital property. It follows, therefore, that in cases involving the marital home that the dispossessed party will be entitled to a credit for one-half of the fair rental value of the marital home. Third, the rental value is limited to the period of time during which a party is dispossessed and the other party is in actual or constructive possession of the property. Fourth, the party in possession is entitled to a credit against

the rental value for payments made to maintain the property on behalf of the dispossessed spouse. (Citations omitted) *See also, Gee v. Gee*, 314 Pa.Super. 31, 460 A.2d 358 (1983).

Wife was out of possession of the marital residence from July 9, 1990 to October 5, 1992. As a consequence, during this period, Wife paid rents ranging from $300 to $425 per month. Although Husband testified that during this period he only resided at the marital residence for two days a week, he in fact enjoyed constructive possession of the property and allowed his adult son to live there rent free during his absences.

Although Husband did make payments on a loan secured by the marital residence, the trial court found that this was not the original mortgage, but a home equity loan taken out in 1986 to enable Husband to purchase a new truck, and held that these payments should not be deducted from the fair rental value. The trial court awarded Wife $5,600 as the fair rental value of the marital residence calculated as follows: "At a fair rental value of $550.00 less $150.00 per month in taxes paid on the home, half the net value would equal $200.00 per month for a period of twenty-eight (28) months, totalling $5,600.00." Under these facts, the trial court did not abuse its discretion in making an award to Wife for half of the fair rental value of the marital residence.

Finally, Husband argues that the trial court's award of alimony to Wife fails to effectuate economic justice between Husband and Wife in light of the fact that Wife was awarded twice the amount of marital property received by Husband under equitable distribution.

Section 3701 of the Divorce Code provides:

(a) General rule. Where a divorce decree has been entered, the court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary.

23 Pa.C.S.A. § 3701.

In determining the nature, amount, duration and manner of payment of alimony, the court must consider numerous factors including the parties' earnings and earning capaci-

ties, income sources, mental and physical conditions, contributions to the earning power of the other, educations, standard of living during the marriage, the contribution of a spouse as homemaker and the duration of the marriage. *Harasym v. Harasym,* 418 Pa.Super. at 495, 614 A.2d at 746, citing *Edelstein v. Edelstein,* 399 Pa.Super. 536, 539, 582 A.2d 1074, 1076 (1990) *alloc. den.,* 528 Pa. 611, 596 A.2d 157 (1991); 23 Pa.C.S.A. § 3701(b).

Section 3701(b)(16) specifically directs a court to consider: Whether the party seeking alimony lacks sufficient property, *including,* but not limited to, *property distributed under Chapter 35 (relating to property rights ),* to provide for the party's reasonable needs.

23 Pa.C.S.A. § 3701(b)(16). (Emphasis added).

The master recommended that Wife receive no alimony, reasoning that she could sell the house and net about $85,000, she was awarded $27,000 in certificates of deposit, and she has her earned income and her portion of Husband's retirement plan. The trial court, however, found the master's failure to award alimony unreasonable. The trial court reasoned that Wife should be awarded alimony because Husband, in comparison to Wife, has higher income and higher future expectations of income; whereas Husband received a lump sum severance payment of $69,000 and receives monthly retirement plan benefits totaling $1,824, Wife earns approximately $7,585 per year and has a poor earning history. The trial court calculated that if $110 per week in alimony were to be added to Wife's current income of $7,585 until Wife becomes eligible for social security, but in no event later than her 65th birthday, Wife would still receive less than $15,000 per year. This ignores the fact that the court also awarded Wife the sum of $500 a month from Husband's pension benefits.

In actuality, when these pension benefits of $6,000 a year are added to Wife's annual earnings of $7,585 and alimony totaling $5,720 a year, Wife would receive a total annual income of $19,305, or a monthly income of $1,609. Husband, on the other hand, would be left with a monthly income of only

$849 after subtracting $500 (pension benefits paid to Wife per the court's order) and $475 (monthly alimony payable to Wife per the court's order), or an annual income of $10,188, as compared to the $36,484 which he earned during his last year of employment.

Additionally, the trial court failed to consider the assets which Wife received in equitable distribution, including the house which the master valued at $85,000, $5,600 in rental credit, and $27,000 in certificates of deposit, for a total of $117,600. A nominal return of four percent on these assets would yield $4,704 per year or an additional $392 per month.

As a consequence of the alimony award, Wife will have twice the annual income of Husband and will enjoy a better theoretical standard of living than during the parties' marriage which was established based on the Husband's income as the primary source of the family's support. *See* 23 Pa.C.S.A. § 3701(b)(8). While it is true that Husband could improve his income situation by returning to work, at 60 years of age his employment options and income potential are limited.

The award of alimony by the court was an abuse of discretion since it failed to "[e]ffectuate economic justice between parties who are divorced or separated and grant or withhold alimony according to the actual need and ability to pay of the parties and insure a fair and just determination and settlement of their property rights" in accordance with the expressed policy of the Divorce Code, 23 Pa.C.S.A. § 3102(a)(6).

The portion of the order awarding Wife alimony is vacated. In all other respects the order is affirmed. Jurisdiction is relinquished.