**Susan M. BERRY, Appellant**

v.

**Douglas R. BERRY, Appellee.**

Superior Court of Pennsylvania.

Submitted Dec. 5, 2005.
Filed May 2, 2006.

Karen L. Semmelman, York, for appellant.

Samuel L. Andes, Lemoyne, for appellee.

BEFORE: GANTMAN, PANELLA, and POPOVICH, JJ.

## OPINION BY PANELLA, J:

¶ 1 Appellant, Susan M. Berry ("Mother"), appeals from the support order, entered on June 9, 2005, by the Honorable John W. Thompson, Jr., Court of Common Pleas of York County, which requires Appellee, Douglas R. Berry ("Father"), to pay bi-weekly spousal and child support. On appeal, Mother contends the trial court erred in classifying a severance payment and a partnership accrual account as income under 23 Pa.Cons.Stat.Ann. § 4302 and not as marital assets under 23 Pa. Cons.Stat.Ann. § 3501. Mother also maintains that the trial court erred in permitting Father's income to be reduced by various items, which, she argues, are not within the purview of Pennsylvania Rule of Civil Procedure 1910.16–2. After careful review, we vacate the child support order and remand for additional proceedings.

¶ 2 Father and Mother married on November 14, 1987. Father and Mother have two minor sons.

¶ 3 In 1983, Father commenced employment with the accounting firm KPMG, LLP, and was made a partner in 1995. On January 30, 2004, Father filed for divorce.

Mother filed a complaint for spousal and child support on May 6, 2004.

¶ 4 In June 2004, KPMG terminated Father's employment. Pursuant to KPMG's bylaws, Father received a severance payment of $306,250.00, before taxes, which was equal to seven months of his base compensation from the prior year. Father also received from KPMG a distribution of the balance of his accrual account, which represented income earned in prior periods which had not yet been distributed to him, in the amount of $109,002.01, before taxes. In July of 2004 Father secured employment with another accounting firm, Parente Randolph, LLC.

¶ 5 Thereafter, Mother and Father appeared at a conference conducted on September 13, 2004, before Conference Officer Carla M. Younger. Thereafter, on September 20, 2004, the trial court entered an order determining that the parties' respective incomes were $4,150.33 net monthly for Mother and $39,841.73 net monthly for Father. The trial court determined that Mother's net income was based on an earning capacity of $65,000.00 and Father's 2004 annual gross income was determined to be $737,980.00. Because this was a high income case, Mother and Father submitted expense statements, which were reviewed and considered pursuant to *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984). The trial court explained that

[a] Support Guidelines calculation was performed. As found in the file the "presumptive minimum" calculates to $2,667.29 monthly with no adjustment for shared custody for the year 2004.2005 calculates to $2,499.72 with a $548.88 reduction for shared custody. This [is] based on Father's 2005 net monthly [income of] $23,290.60. ($400,-000.00 annual gross)[.] With the expense analysis an Order in the amount of $3,153.00 bi-weekly for support of 2

children and $3,968.00. bi-weekly for spousal support was issued effective May 3, 2004. This [order] was based on the annual gross and monthly net figures for 2004 above.

Trial Court Opinion, 6/9/05, at 2. The support order was modified effective January 1, 2005, and ordered that Father pay child support bi-weekly in the amount of $3,885.00 and pay bi-weekly spousal support in the amount of $1,532.00.

¶ 6 Father filed exceptions in the trial court and requested a special support hearing. The trial court subsequently conducted a special support hearing. At the hearing, Mother argued that the severance pay and accrual account should not be considered income pursuant to 23 Pa.Cons. Stat.Ann. § 4302, but should be classified as marital assets subject to equitable distribution. The trial court rejected Mother's argument and found the severance pay and accrual account to be income as defined in 23 Pa.Cons.Stat.Ann. § 4302.

¶ 7 On June 9, 2005, the trial court entered an order which required Father to pay $1,896.00 bi-weekly for the support of the two children and $3,065.00 bi-weekly in spousal support retroactive to May 13, 2004, and required Father to pay $1,781.00 bi-weekly for the support of the two children and $1,418.00 bi-weekly in spousal support effective January 1, 2005.[1] This timely appeal followed.

¶ 8 On appeal, Mother raises the following issues for our review:

A. Inclusion of capital marital assets in excess of $415,000.00 as income to Father to calculate a *Melzer* child support award for the year 2004 only, which resulted in a mere additional $2,990.00 to Mother, the recipient of the *Melzer* child support award, is error when Mother requested such capital assets be included in the pending divorce action.

1. Since the purpose of the Support Guidelines is to benefit the obligee and the children, Mother's request to treat a severance payment and a partner accrual account as marital assets should be honored when Mother only benefits an additional $2,990.00 of child support for seven months while losing marital assets in excess of $415,000.00.

2. Severance pay of $306,250.00 and a partner accrual account of $109,002.01 are clearly capital marital assets; however, if included as income for child support, Father will receive a significant windfall since this is a *Melzer* case and double dipping is impermissible.

B. The Child Support Guidelines do not permit Father's net income to be reduced by PAC contributions, loan principal payments, unreimbursed business expenses or optional pension contributions.

Appellant's Brief, at 4.

¶ 9 Our Supreme Court has set forth the standard of review employed in child support matters as follows:

In our appellate review of child support matters, we use an abuse of discretion standard. A support order will not be disturbed on appeal unless the trial court failed to consider properly the requirements of the Rules of Civil Procedure Governing Actions for Support, Pa. R.C.P.1910.1 *et seq.,* or abused its discretion in applying these Rules. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or mis-

---

1. The parties share equal custody of the children.

applied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused. This is a limited role and, absent a clear abuse of discretion, the appellate court will defer to the order of the trial court. A finding of abuse is not lightly made but only upon a showing of clear and convincing evidence. ..

*Christianson v. Ely,* 575 Pa. 647, 654–655, 838 A.2d 630, 634 (2003) (quotation marks and citations omitted).

 ¶ 10 Both of Mother's issues center on the contention that the trial court erred in determining Father's income. Thus, we begin our discussion with the acknowledgement that "[w]hen determining income available for child support, the court must consider all forms of income." *MacKinley v. Messerschmidt,* 814 A.2d 680, 681 (Pa.Super.2002) (citation omitted). Income is defined in the Domestic Relations Code as follows:

> **"Income."** Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to

source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 PA.CONS.STAT.ANN. § 4302.

 ¶ 11 In determining income for support purposes, however, it is axiomatic that the trial court may not include income that constitutes marital property under 23 PA.CONS.STAT.ANN. § 3501, as such an action would foreclose the equitable distribution of those assets. We have explained that "money included in an individual's income for the purpose of calculating support payments may not also be labeled as a marital asset subject to equitable distribution." *Miller v. Miller,* 783 A.2d 832, 835 (Pa.Super.2001) (quoting *Rohrer v. Rohrer,* 715 A.2d 463, 465 (Pa.Super.1998)).

¶ 12 In her first issue, Mother argues that the trial court erred in determining that Father's severance payment and accrual account represent income and not marital assets.[2] For Mother, this is an obviously important distinction as "[w]e do not condone 'double dipping', i.e., using the same revenue as a source for 'support' and 'equitable distribution.'" *Rohrer,* 715 A.2d at 466 (citation omitted). In its opinion, the trial court simply concluded that the severance payment and accrual account were income and not marital assets. *See* Trial Court Opinion, 6/9/05, at 4. The trial court did not consider Mother's argument as it failed to acknowledge the distinction between the income that was earned during the marriage and income earned after separation.

 ¶ 13 We first address Mother's argument that the trial court erred in finding

---

2. The marital assets have yet to be equitably distributed.

that the accrual account was income under 23 PA.CONS.STAT.ANN. § 4302. The pertinent question centers on the time period when this income was earned. "Marital property includes *all property acquired by either party during the marriage* and any property acquired after separation until the date of divorce if that property is acquired in exchange for marital assets." *Fishman v. Fishman*, 805 A.2d 576, 578 (Pa.Super.2002) (internal quotation marks and citation omitted) (emphasis added). *See also,* 23 PA.CONS.STAT.ANN. § 3501.

¶ 14 Father notes in his brief that "[t]he distribution of the balance in his 'accrual' account, which represents income earned in *prior periods* which had not yet been distributed to him because of the difference in accounting methods (accrual vs. cash) used by the firm for its internal accounting and its tax accounting. The balance in the accrual account was determined to be $109,002.01, before taxes." Appellee's Brief, at 5 (emphasis added). A review of the record reveals that the money was in the capital account in 2002. For instance, at the special support hearing, Father's expert, Bruce J. Brown, CPA, CVA, testified as follows:

> **Attorney Semmelman:** So that [$]109,-000[.00] was an amount that had accrued to Mr. Berry back in 2002, correct?
>
> **Brown:** It was their accrual capital at that date there, a cash basis, tax payer, they keep track of their accrual basis apparently by partner, and his account was in September of 2003, I'm sorry, September of 2002 would have been included as accrual capital.

N.T., Special Support Hearing, 3/29/05, at 118.

¶ 15 Father contends that the date of separation was in September of 2003, while Mother argues in her brief that the date of separation was January 30, 2004. The record establishes that the money was in the partnership accrual account before either purported separation date.[3] Thus, the money was earned during the marriage; it is therefore marital property subject to equitable distribution. Accordingly, the trial court clearly abused its discretion in finding that the partnership accrual account was income under 23 PA.CONS.STAT. ANN. § 4302.

¶ 16 Next, we address Mother's contention that the trial court erred in classifying the severance pay as income under 23 PA.CONS.STAT.ANN. § 4302. Severance pay is defined as "[m]oney (apart from back wages or salary) paid by an employer to a dismissed employee." BLACK'S LAW DICTIONARY 1406 (8th ed.2004). The classification of severance pay, although oftentimes raised in support and equitable distribution cases, is nonetheless an issue of first impression in the appellate courts this Commonwealth.[4] Several of our sister states, however, have considered the issue of severance pay in the context of whether it is marital property subject to equitable distribution. The majority of states that have considered the issue have concluded that "the touchstone of the classification is whether the severance pay was intended to compensate the employee for efforts made during the marriage or to replace post-

---

3. Mother's expert, James A. Smeltzer, CPA, testified that the $109,002.01 "was included in [Father's] capital balance as of September 30th of 2003 and represented part of [Father's] property that was owned at that point in time." N.T., Special Support Hearing, 3/29/05, at 35.

4. We note that a panel of this Court discussed the classification of severance pay in the context of equitable distribution, but the panel found that it did not have to reach the issue in the context of that case. *See Ressler v. Ressler*, 434 Pa.Super. 563, 644 A.2d 753, 755–756 (1994).

separation earnings." *Luczkovich v. Luczkovich*, 26 Va.App. 702, 496 S.E.2d 157, 160 (1998) (citing, *inter alia, Ressler v. Ressler*, 434 Pa.Super. 563, 644 A.2d 753 (1994) and *Franklin v. Franklin*, 116 N.M. 11, 859 P.2d 479 (App.1993), *cert. denied*, 115 N.M. 795, 858 P.2d 1274 (1993) (holding severance pay received after divorce as compensation for future earnings is separate property)). *See also, In re Marriage of Holmes*, 841 P.2d 388 (Colo.Ct.App. 1992) (stating although based on length of service provided during the marriage, severance payment is conditional on termination and replaces expected loss of income, therefore it is marital property for purposes of equitable distribution and not includable as income for support calculation).

■ ¶ 17 In the present case, a reading of the severance agreement in KPMG's bylaws readily discloses that the intent of the agreement is to replace post-separation earnings, and accordingly is not intended to compensate Father for efforts made during the marriage. Specifically, it is conditional on termination as the severance agreement provides that it is payable only to "[a] Member who is requested to voluntarily withdraw from the Firm . . . ." By–Laws of KPMG, LLP, Article XIII, Requested Withdrawal (a). Conversely, a member of the firm who leaves of his or her own volition "is not entitled to severance . . . ." *Id.*, at (b). Furthermore, the severance pay, while calculated, at least in part on length of service provided during the marriage, arises post-separation; in this case, although the parties had earlier separated,[5] Father left his employment on June 30, 2004. *See* Appellant's Brief, at 6.

¶ 18 As such, we find no error in the trial court's classification of the severance pay as income pursuant to 23 Pa.Cons.Stat. Ann. § 4302.[6]

¶ 19 Lastly, Mother argues that the trial court erred in permitting Father's net income to be reduced by the following: mandatory pension contributions ($54,662.00), mandatory political action committee ("PAC") contributions ($550.00), loan principal payments ($15,586.00), and unreimbursed business expenses ($15,500.00). The income reduction totals $86,298.00. *See* Appellant's Brief, at 21. In its Rule 1925 opinion, the trial court notes that "[i]n reviewing the Memorandum Opinion we don't see that we specifically approved of these deductions." Rule 1925(a) Opinion, 8/15/05, at 2.

---

**5.** As mentioned, the date of separation was not determined by the trial court, but Mother's contention that the separation occurred on January 30, 2004, clearly bars her claim in this regard; it is of no consequence that Father argues the separation date was earlier.

**6.** In support of her argument, Mother relies extensively on *LaBuda v. LaBuda*, 349 Pa.Super. 524, 503 A.2d 971 (1986), *appeal denied*, 514 Pa. 648, 524 A.2d 494 (1987). Mother argues that "the Court in *LaBuda* ... established the principle that the time a spouse actually receives an asset is not controlling as to whether the asset is marital property, the crucial time is when the right to receive the asset actually accrues." Appellant's Brief at 17. *LaBuda* affords Mother no support because it dealt with early retirement incentives, not a severance agreement. In *LaBuda*, we held that early retirement incentives received by husband after separation were not marital property because husband's right to receive the benefits did not accrue prior to the separation of the parties. Therefore, wife could not have expected to enjoy these payments since neither party had any idea that husband would receive the payments until after the parties separated. We also note that in a recent case, which decided whether an early retirement inducement should be considered marital property for purposes of equitable distribution, our Supreme Court specifically refused to follow *LaBuda*. *See Meyer v. Meyer*, 561 Pa. 225, 229 n. 2, 749 A.2d 917, 919 n. 2 (2000).

¶ 20 Preliminarily, we note that the parties, and the trial court, fail to differentiate between the steps in calculating net income for support purposes. First, there must be a calculation of what could be termed the real gross income, which is the total income from any source without consideration of any deductions. Secondly, the trial court must determine the monthly gross income pursuant to Pennsylvania Rule of Civil Procedure 1910.16–2(a). As will be discussed, unreimbursed business expenses may be deducted in determining monthly gross income if the expenses constitute *bona fide* expenses. Finally, the trial court must then determine the monthly net income pursuant to Rule 1910.16–2(c)(1). Rule 1910.16–2(c)(1) specifically provides for certain deductions from monthly gross income to arrive at net income, among which is mandatory pension contributions.

¶ 21 In the present case, the trial court allowed the deductions for mandatory pension contributions, mandatory PAC contributions, loan principal payments, and unreimbursed business expenses, as it "accept[ed] Father's basic calculation of a $776,121.00 annual gross [income for 2004]." Trial Court Opinion, 6/9/05, at 4. As Mother points out, Father's gross income calculation of $776,121.00 comes from his expert, Bruce J. Brown, CPA, CVA. In his expert report, Mr. Brown deducted mandatory pension contributions, mandatory PAC contributions, loan principal payments, and unreimbursed business expenses from Father's 2004 gross income. *See* Expert Report, 3/10/05, 2004 Estimated Disposable Income Calculation. Thus, the trial court is incorrect when it states that it did not make the foregoing deductions to Father's 2004 gross income; it did so implicitly by accepting the calculation of Father's income from his expert.

¶ 22 In determining monthly gross income for support purposes, Rule 1910.16–2(a)(2) provides that income includes "net income from business . . . ." Pa. R.C.P., Rule 1910.16–2(a)(2), 42 Pa.Cons. Stat.Ann. The use of the word "net" in the rule specifically implies that there are acceptable business deductions. For instance, provided with the appropriate itemizations, unreimbursed business expenses, when used to increase income, may be deductible from gross income, although it must be proven on a case-by-case basis. Presumably, Father's expert, and the trial court by accepting Father's expert's calculation of gross income, also deducted the mandatory pension contributions, mandatory PAC contributions, and loan principal payments pursuant to Rule 1910.16–2(a)(2).

¶ 23 We find that the trial court abused its discretion with respect to deducting the mandatory pension contributions to arrive at gross income. Mandatory pension contributions do not qualify as business expenses such that they could be deducted pursuant to Rule 1910.16–2(a)(2). However, as noted *infra* in this Opinion, this deduction is properly taken when determining monthly net income.

¶ 24 With respect to the remaining deductions for (1) unreimbursed business expenses, (2) mandatory PAC contributions, and (3) loan principal payments, the record consists merely of Father's expert's bald conclusions that the deductions were appropriate. Put simply, there were no itemizations or documentation provided by Father to support these deductions. Thus, in simply accepting Father's expert's conclusions as to deductions for gross income, without sufficient explanation or support, we find that the trial court abused

its discretion.[7]

¶ 25 In addition to Rule 1910.16–2(a) (Monthly Gross Income), Rule 1910.16–2(c)(1) (Support Guidelines. Calculation of Net Income), provides, in pertinent part, the following:

**(c) Monthly Net Income.**

(1) Unless otherwise provided in these rules, the court shall deduct *only* the following items from monthly gross income to arrive at net income:

(A) federal, state, and local income taxes;

(B) F.I.C.A. payments and non-voluntary retirement payments;

(C) union dues; and

(D) alimony paid to the other party.

Pa.R.C.P., Rule 1910.16–2(c)(1), 42 Pa. Cons.Stat.Ann. (emphasis added). The Explanatory Comment to the Rule states that "[s]ubdivision (c) sets forth the *exclusive* list of the deductions that may be taken from gross income in arriving at a party's net income." *Id.*, Explanatory Comment, 2005 (emphasis added).

¶ 26 As noted, the trial court permitted a deduction based on mandatory pension contributions. Rule 1910.16–2(c)(1)(B), unlike Rule 1910.16–2(a), permits deductions for "non-voluntary retirement payments" to be made "from monthly gross income to arrive at net income." Mother contends that it was not established that Father's mandatory pension contribution "was mandatory and, therefore, this distribution should not have been utilized to reduce Father's [net] income." Appellant's Brief, at 21. The record does not support Mother's assertion. Mr. Brown testified that he contacted KPMG and confirmed that the pension contribution was, in fact, mandatory. *See* N.T., Special Support Hearing, 3/29/05, at 94.

As such, we find that the trial court did not err in reducing Father's monthly net income by the amount of the mandatory pension contribution, i.e., $54,662.00.

¶ 27 Based on the foregoing discussion, we vacate the child support order and remand the matter to the trial court to recalculate Father's income for support purposes in accordance with the foregoing discussion.

¶ 28 Order vacated. Jurisdiction relinquished.

¶ 29 Judge GANTMAN concurs in the result.

---

**7.** Accordingly, we need not decide whether deductions for mandatory PAC contributions and loan principal payments are proper under Rule 1910.16–2(a)(2).