J-A23027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ERIC J. PIKIEWICZ, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MICHELE L. TIMMERS, | |
| Appellee | No. 1867 WDA 2013 |

Appeal from the Order entered October 29, 2013,
in the Court of Common Pleas of Erie County,
Domestic Relations, at No(s): No. NS201300791

BEFORE:  DONOHUE, ALLEN, and MUSMANNO, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED AUGUST 26, 2014**

Eric J. Pikiewicz, ("Father"), appeals from the order denying his complaint for support filed against Michele L. Timmers ("Mother"). We affirm.

The parties are the parents of one minor child, born in October of 2002. The trial court summarized the case history as follows:

> On December 18, 2002, [Mother] filed a Complaint for Support [in which she requested spousal and child support]. Following a *de novo* hearing, the [trial court] issued a November 3, 2003 Order assessing Mother with a monthly net income/earning capacity of $1,982.40, Father with a net income/earning capacity of $4,079.30[,] and setting Father's child support obligation at $725.49 per month and his spousal obligation at $411.42 per month.
>
> Throughout the pendency of this proceeding, there were multiple petitions for modification of support, resulting in relatively minor adjustments to Father's child support obligation. Prior to Father's present petition, the most recent order was a February 25, 2010 Order of Court

which assessed Mother with a monthly net income of $2,724.05, Father with a monthly net income of $4,646.34[,] and set Father's child support obligation at $589.77 plus arrears.

On May 29, 2013, Father filed a Petition for Modification of an existing Support Order requesting that his support obligation be terminated "as he retired effective 5/1/13 and will share custody of child (50/50%)." Also on May 29, 2013, Father filed a Complaint for Support against Mother.

Following a June 27, 2013 support conference, a July 1, 2013 Order [was entered] assessing Mother with a monthly net income of $2,849.89, Father with a monthly net income of $5,343.39[,] and setting Father's monthly child support obligation at $450.00 plus arrears. As reflected in the conference officer's Summary of Trier of Fact, the order assessed Father with an earning capacity based upon his 2012 wages, rather than his monthly pension income of $1,463.79 due to Father's voluntary decrease in income. Moreover, as stated in the order, the order allows a downward deviation from the guideline amount due to the shared custody by the parties of the child. A July 1, 2013 Order was also issued dismissing Father's Complaint [for support] against Mother as "[Father] has income/earning capacity greater than [Mother's]. The [Support] Guidelines do not warrant [Mother] paying support based on [Mother's] income and [Father's] earning capability."

Father filed a Demand for Court Hearing with regard to both orders. [With regard to his modification petition,] Father alleged: "The conference officer erred in basing [Father's] income on his 2012 wages, rather than his current retirement income which would result in an award of child support for [Father]. [With regard to his complaint for support,] Father alleged: "The conference officer erred in recommending no child support as [Father's] retirement income is less than [Mother's] income."

Following an October 29, 2013 *de novo* hearing, this Court issued orders of the same date making each of the July 1, 2013 Orders final orders.

- 2 -

Trial Court Opinion, 1/17/14, at 1-3 (citations omitted). This timely appeal followed. Both Father and the trial court have complied with Pa.R.A.P. 1925.

Father filed his modification petition and his complaint for support against Mother at different docket numbers. As noted by the trial court, Father filed a notice of appeal from only the docket number listing his complaint for support against Mother. The trial court opined:

> As Father's issues [in his Pa.R.A.P. 1925(b) statement] do not make sense in terms of the order dismissing his Complaint, it appears that Father intended to appeal this Court's order at [the docket number] assessing him with an earning capacity of $5,343.39[,] and setting his monthly [child] support obligation at $450.00 plus arrears. Following this assumption, the Court will address Father's allegations of error.

Trial Court Opinion, 1/17/14, at 4 (citations omitted).

Because the use of Father's earning capacity instead of his retirement income was at issue in both dockets, we find no jurisdictional impediment to appellate review. *See Guy M. Cooper, Inc. v. East Penn School District*, 894 A.2d 179, 181-82 (Pa. Cmwlth. 2006) (discussing Pennsylvania decisions which "involve the issue of whether an incorrect date or incorrect docket number of the order being appealed is an amendable defect"); *see also* Pa.R.A.P. 105(a) (providing that rules of appellate procedure should be construed liberally).

Father raises the following issues:

> I. The Trial Court erred and abused its discretion in ordering [Father] to pay more than 50% of the minor

child's maintenance and support in its Order of October 29, 2013 when it declared the Order of July 1, 2013 as final.

II. The Trial Court erred and abused its discretion by failing to consider [Father's] Layoff Notice, the respective family incomes and the needs of the child in calculating support in its Order of October 29, 2013 when it declared the Order of July 1, 2013 as final.

Father's Brief at 3.

Because both issues involve the trial court's decision to use Father's earning capacity rather than his actual retirement income to determine his child support obligation, we address them together.

Our standard of review is well-settled:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Sirio v. Sirio*, 951 A.2d 1188, 1192-93 (Pa. Super. 2008) (citation omitted).

When a party petitions for modification of an existing support order, he or she must "specifically aver the material and substantial change in circumstances upon which the petition is based." Pa.R.C.P. 1910.19(a). It is the moving party's burden to prove that a material and substantial change of circumstances has occurred since the entry of the previous support order.

*Plunkard v. McConnell*, 962 A.2d 1227, 1229 (Pa. Super. 2008). "[T]he determination of whether such a change occurred in the circumstances of the moving party rests within the trial court's discretion." *Id.*

"When determining income available for child support, the court must consider all forms of income." *Berry v. Berry*, 898 A.2d 1100, 1104 (Pa. Super. 2006) (citation omitted). Moreover, in determining a parent's ability to provide support, the focus is on earning capacity rather than on a parent's actual earnings. *Reinert v. Reinert*, 926 A.2d 539 (Pa. Super. 2007). Rule 1910.16-2(d)(4) of the Pennsylvania Rules of Civil Procedure provides the domestic relations hearing officer and/or trial court with the methodology to determine whether a party should be assessed an earning capacity. The subsection provides:

### (d) Reduced or Fluctuating Income.

(1) *Voluntary Reduction of Income.* When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause, there will be generally no effect on the support obligation.

(2) *Involuntary Reduction of, and Fluctuation in, Income.* No adjustments in support payments will be made for normal fluctuations in earnings. However, appropriate adjustments will be made for substantial continuing involuntary decreases in income, including but not limited to the result of illness, lay-off, termination, job elimination or some other employment situation over which the party has no control unless the trier of fact finds that such a reduction in income was willfully undertaken in an attempt to avoid or reduce the support obligation.

(3) *Seasonal Employees.* Support orders for seasonal employees, such as construction workers, shall ordinarily be based upon a yearly average.

- 5 -

(4) *Earning Capacity.* If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain employment, the trier of fact may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(4). Following a voluntary reduction in income, a parent seeking a support modification must establish that the change in income was not made in order to avoid child support and that a reduction in the support obligation is warranted based upon the parent's efforts to mitigate the lost income. ***Ney v. Ney***, 917 A.2d 863, 866 (Pa. Super. 2007).

In denying Appellant's request for a reduction in his child support obligation due to his retirement, the trial court reasoned as follows:

Voluntary retirement does not entitle a support obligor to a reduction in his support obligation; it merely allows him the opportunity to demonstrate a need for reduction. ***See Smedley v. Lowman***, 2 A.3d 1226, 1228 (Pa. Super. 2010).

\*\*\*

Father testified that he was laid off from his job on February 28, 2012. The February 28, 2012 letter provided by Father in support of his position provides:

Key Lakes, Inc. and American Maritime Officers have agreed upon a new contract that will take effect March 1, 2012. This new contract eliminates the seniority provision and reduces the employee roster to those who are permanently assigned to a specific vessel. Regretfully, you could not be retained in a permanent position at this initial fit out. You should consider yourself eligible for employment at Key Lakes, Inc., and we urge you to register to [a] ship as jobs will become available.

The permanent assignments were made through a process that was discussed with the union and the final appointment list was approved by the AMO.

*See* February 28, 2012 Letter from Captain William C. Peterson, General Manager, to Eric Pikiewicz. In reality, Father did not lose his employment. To the contrary, Father was simply unable to maintain a permanent assignment on a ship in the Great Lakes. Work remained available to Father through his contract with American Maritime Officers. In fact, after February of 2012, Father worked vessels that took him off of the Great Lakes. Father did not, however, want to work jobs that took him off of the Great Lakes and, therefore, on June 1, 2013, Father, at 44 years of age, retired. Accordingly, this Court determined that Father voluntarily retired to avoid having to take jobs which took him off of the Great Lakes.

Prior to retirement, Father worked in the maritime transportation industry in excess of twenty years. When Father retired, he received a $1,660.84 monthly pension, a substantial reduction from his $5,343.39 monthly net income in 2012. As a result, it is clear that Father voluntarily reduced his income.

Finding that Father voluntarily reduced his income, the Court considered whether the change in income was made in order to avoid child support and whether Father's mitigation efforts warranted a reduction in his [child support obligation]. ***See Kersey v. Jefferson***, 791 A.2d 419 (Pa. Super. 2002); ***see also Grimes v. Grimes***, 596

A.2d 240 (Pa. Super. 1991). As discussed above, Father retired in order to avoid working off of the Great Lakes, not to avoid child support. Father has not, however, engaged in any mitigation efforts to minimize the impact of his reduction in income. To the contrary, Father testified that he has no plans to obtain steady employment; instead, it is Father's intention to enjoy time with his son and make a living on the farm.

Considering that Father is only 44 years old, that there is no evidence that Father has any health problems, that he has in excess of 20 years [of] experience in the maritime transportation industry, and that jobs were available in his line of work, although he voluntarily chose not to continue working them, the Court assessed Father with an earning capacity reflecting his work in maritime transportation. Taking into account the parties' shared custody arrangement, the Court allowed a downward deviation in Father's support obligation.

For the foregoing reasons, Father's assignments of error are without merit.

Trial Court Opinion, 1/17/14, at 4-6.

Our review of the record and pertinent case law supports the trial court's conclusions. In **Smedley v. Lowman**, 2 A.3d 1226 (Pa. Super. 2010), this Court held that the trial court did not abuse its discretion by assigning a father an earning capacity greater than his pension for child support purposes, when the father voluntarily retired two years after accumulating his fully vested pension benefits, while in good health and fifty-two years of age. **Id.** at 1227. In so holding, we stated that the father's "personal choice to retire at age fifty-two and receive a pension representing only half of his former salary is a voluntary reduction of income as indicated in Rule 1910.16-2(d)." **Id.** at 1229. Additionally, we opined

"although [the father] was entitled to retire after more than thirty years of service in the Waynesboro Police Department, he also had the interests of his seven-year-old child to consider. As stated by this Court in [**Grimes v. Grimes**, 596 A.2d 240 (Pa. Super. 1991)], [the father's] duty to his child is like 'any other fixed obligation.'" **Id.**

The facts in **Smedley** are similar to the facts before us. In both cases, neither father indicated a willingness to supplement his retirement income. While the trial court in **Smedley** affirmed the assignment of an earning capacity equivalent to a part-time job, **id.**, our review of the record supports the trial court's determination that Father declined available maritime jobs so that he could retire and spend more time with his son. Thus, the trial court did not err in applying an earning capacity equal to Father's prior earnings.

Father's arguments to the contrary are unavailing. He first asserts that the trial court abused its discretion by ordering him to pay child support to Mother "in the absence of it being in the best interests of the child." Father's Brief at 7. According to Father, the record does not support the trial court's finding, and the trial court did not support its finding "with any economic analysis or need based reasoning why said support order should be maintained in light of the new equal custody order . . . and subsequent schooling order[.]" **Id.**

Our review of the record indicates that the support guidelines were properly applied in this case, and that the trial court deviated downward in

favor of Father due to the parties' shared custody arrangement. Thus, the record refutes Father's claim.

To the extent Father refers to his testimony as refuting the trial court's determination that he has not continued to seek employment after retiring, we note that issues of credibility which are supported by the record cannot be disturbed on appeal. **See Doherty v. Doherty,** 859 A.2d 811, 812 (Pa. Super. 2004) (explaining that matters of credibility are solely within the province of the trial court as fact finder). The trial court's credibility finding likewise applies to Father's claim that he was "laid off." Appellant's Brief at 10.

Finally, Father argues that the trial court abused its discretion by "presum[ing] that [he] solely because of sex and past work history should be the main support of the child." Father's Brief at 10. According to Father, "[t]his thinking of the Trial Court is antiquated and gender bias." **Id.** Father further notes that Mother "received a lump sum from [his] pension through the QDRO," and thereby "enjoys an increase in her wealth without accountability." **Id.** at 11.

Our review of the record reveals no support for Father's characterization of the support order. Additionally, Mother's award of a lump sum of Father's pension in equitable distribution as part of the parities' divorce proceedings in 2005, **see** N.T., 10/29/13, at 8, is for Mother's benefit, not for the benefit of the child. As noted above, Father's duty to support the child is like any other "fixed obligation," **Grimes**, **supra**.

Because our review of the record supports the trial court's assignation of an earning capacity to Father given his voluntary retirement, as well as the deviation downward from the applicable guideline amount given the current shared custody arrangement, we affirm the trial court's support award.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/2014