J-S61014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SHALA DOPICO | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| REMO LEONE | |
| Appellant | No. 42 WDA 2016 |

Appeal from the Order Entered December 12, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): FD-06-3722-004

BEFORE:  PANELLA, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.:                    **FILED SEPTEMBER 28, 2016**

Appellant, Remo Leone ("Father"), appeals from the order directing him to pay Shala Dopico ("Mother") $825.78 in child support per month. Father argues that the trial court erred in considering evidence that it had previously barred Mother from presenting due to Mother's non-compliance with a discovery order. After careful review, we affirm based upon the trial court's Rule 1925(a) opinion.

We take the facts and procedural history of this case from the trial court's opinion.

> The parties are parents to a nine-year-old son, whose child support entitlement has been the subject of some litigation. Recent history begins in February 2015, where, upon a modification and compliance review, the hearing officer established an interim child support obligation of $441.24 to be paid by Father, pending the resolution of a complex master hearing. Notably, Mother's monthly net income was determined

to be $2,006.33. The ultimate case, now designated complex, was listed for a September 2, 2015 hearing date. In weeks prior to the trial, Father brought an "Emergency Motion to Preclude," wherein he alleged Mother had not complied with his discovery requests. Mother "has failed to respond in any way to [Father's] Request for Production of Documents … The purpose of [Father's request] was to ascertain whether [Mother] had new or additional expenses since the support conference that she would be introducing at the hearing and to assess whether there has been a change in her income since the support conference." This [c]ourt ordered Mother to comply within three days or she "shall be precluded from entering any documents into evidence or any evidence or testimony regarding additional expenses at the [complex support hearing.]" Mother did not so comply. The [c]ourt preserved the issue of sanctions, allowing the Master to make the appropriate determination.

At the hearing, the Master first calculated Mother's income by relying on a figure established by the interim order seven months prior. That figure, utilized in the February 2015 temporary order, was based on Mother's W-2 wages she earned as a hair dresser, a position she had since left. Pursuant to this [c]ourt's August 28 order to preclude, Mother's counsel was prevented from submitting any evidence or testimony which might demonstrate a decrease in her income. And while Father's counsel refused to stipulate to Mother's income, his attorney, remarkably, chose not to pursue cross-examination.

Consequently, the entirety of the hearing concerned Father's income. Father is a self-employed mason who comingled his personal and business monies. The transcript is replete with personal purchases paid out of Father's business account. … After factoring in the appropriate reductions, the Master determined Father's net income to be $4,826 per month. … Father filed timely exceptions, which this [c]ourt dismissed.

Trial Court Opinion, 3/7/16, at 1-4 (citations omitted) (brackets in original).

In this timely appeal, Father argues that the trial court erred in allowing Mother to present documents in contravention of its earlier

discovery sanction and in including a wedding gift in his 2014 income. Our standard of review for a child support order is well-settled.

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Kimock v. Jones*, 47 A.3d 850, 854 (Pa. Super. 2012) (citations omitted).

After careful review of the parties' briefs, the record on appeal, and the relevant case law, we conclude that the trial court's opinion, authored by the Honorable Kathryn Hens-Greco, thoroughly and properly disposes of Appellant's issues on appeal. *See* Trial Court Opinion, 3/7/16, at 4-7 (concluding that Mother's documentary evidence concerned only Husband's income and did thus did not violate the sanction order, and that there was no reason to disturb the Master's credibility determination regarding the alleged wedding gift). We, therefore, affirm the order based on the trial court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/28/2016

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

Shala Dopico,

        Plaintiff,

   v.

Remo Leone,

        Defendant.

OPINION

No.:   FD- 06-03722-004

42 WDA 2016

BY:

Honorable Kathryn Hens-Greco
440 Ross Street
Suite 5077
Pittsburgh, PA 15219

COPIES TO:

Counsel for Plaintiff:

Timothy G. Uhrich, Esq.
429 Forbes Ave , Suite 909
Pittsburgh, PA 15219

Counsel for Defendant:

Jennifer Lynch Jackson, Esq.
1809 West Street
Munhall, PA 15120



FILED
16 MAR -7 PM 3:21



EXHIBIT
E

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

Shala Dopico,

                Plaintiff,

v.

Remo Leone,

                Defendant.

No.: FD- 06-03722-004

42 WDA 2016

## OPINION

In this matter, Defendant Remo Leone ("Father") appeals from this Court's Order of December 15, 2015, which dismissed his Exceptions to the Special Master's child support recommendation, making final the temporary order of September 16, 2015. Plaintiff Shala Dopico ("Mother") and Father appeared before the Master on September 2, 2015. The Master calculated a child support award for the parties' minor son, obligating Father to pay $825.78 per month in support and another $83 per month in arrears, which was set at $4,090.37. Father took Exceptions, arguing, *inter alia*, that this Court had previously barred Mother from entering any evidence on account of her noncompliance during discovery. This Court dismissed those Exceptions. Father appeals.

## A. RELEVANT PROCEDURAL AND FACTUAL HISTORY

The parties are parents to a nine-year-old son, whose child support entitlement has been the subject of some litigation. Recent history begins in February 2015, whereupon a modification and compliance review, the hearing officer established an interim child support obligation of $441.24 to be paid by Father, pending the resolution of a complex master hearing. Notably, Mother's monthly net income was determined to be $2,006.33. *See* Order of Court, dated February 27, 2015. The ultimate case, now designated complex, was listed for a

1

September 2, 2015 hearing date. In weeks prior to the trial, Father brought an "Emergency Motion to Preclude," wherein he alleged Mother had not complied with his discovery requests. Mother "has failed to respond in any way to [Father's] Request for Production of Documents....The purpose of [Father's request] was to ascertain whether [Mother] had new or additional expenses since the support conference that she would be introducing at the hearing and to assess whether there has been a change in her income since the support conference." *See* Father's Emergency Motion to Preclude, dated August 28, 2015, at Paragraphs 4-5. This Court ordered Mother to comply within three days or she "shall be precluded from entering any documents into evidence or any evidence or testimony regarding additional expenses at the [complex support hearing.]" *See* Order of Court, dated August 28, 2015. Mother did not so comply. The Court preserved the issue of sanctions, allowing the Master to make the appropriate determination.

At the hearing, the Master first calculated Mother's income by relying on a figure established by the interim order seven months prior. That figure, utilized in the February 2015 temporary order, was based on Mother's W-2 wages she earned as a hair dresser, a position she had since left. Pursuant to this Court's August 28 order to preclude, Mother's counsel was prevented from submitting any evidence or testimony which might demonstrate a decrease in her income. And while Father's counsel refused to stipulate to Mother's income, his attorney, remarkably, chose not to pursue cross-examination.

Consequently, the entirety of the hearing concerned Father's income. Father is a self-employed mason who comingled his personal and business monies. The transcript is replete with personal purchases paid out of Father's business account. Ready examples include: $175 worth of perfume and jewelry (*see* T.T., at 54); beer and movie rentals (*Id.*, at 118-119); a tuxedo

2

and wedding expenses (*Id*, at 65-66, 116); and nearly $500 worth of fireworks (*Id.*, at 68). There were still other questionable expenses: Father initially argued that his $222 Comcast cable bill was a business expense in that he uses the internet to conduct his online banking. *Id.*, at 56-57. Hundreds of dollars on expensive meals (*Id.*, at 76; 61-62) would suggest entertaining clients, except that it appears not very cost-effective; Husband argued that he cannot afford to advertise. Then there are expenses which Father cannot explain (*Id.*, at 68-69, relating to expenses incurred at a casino). Even other expenses, such as "work clothes," are not necessarily *bona fide* business expenses. *Id.*, at 101-102. Finally, there was activity that appeared downright fraudulent. Groceries bought on Christmas Eve were almost certainly for a personal gathering and not for a supposed holiday party thrown for clients (*Id.*, at 54). Father spent $500 dollars at Family Dollar, where he purchased pre-paid Visa cards. *Id.*, at 59. Father argued that he bought these cards on the advice of his accountant; this way, his business card number would not be exposed to fraud. *Id.* Father also testified that income in the amount of $12,500 was actually a wedding gift, but that he placed the funds in his business account because his personal account was frozen for nonpayment of child support. *Id.*, at 64; 104.

In his hearing summary, the Master explained Father's business grossed $49,002 by the terms of Father's own 2014 tax return. But after reviewing the bank statements and tax returns, it appeared to the Master that Father utilized an additional $56,329 from his business. When the Master added that sum, Father's gross income increased to $87,315. After factoring in the appropriate reductions, the Master determined Father's net income to be $4,826 per month. Because Father's attorney is his new spouse, the Master did not believe Father incurred a cost and thus did not grant Father's request for attorney's fees. *See* Master's Order of Court and

3

Hearing Summary, dated September 2, 2015. Father filed timely exceptions, which this Court dismissed. Now comes this appeal.

## B. DISCUSSION

Verbatim, his issues are these:

1. The Special Master abused his discretion and/or committed an error of law by allowing [Mother] to enter documents into evidence in contravention of the trial court's order dated August 28, 2015, which sanctioned [Mother] for discovery violations and mandated, *inter alia*, that, "Mother shall be precluded from entering any documents into evidence" at the Complex Support Hearing. Father was severely prejudiced in that he was unable to establish Mother's earning capacity due to the fact that she fails to produce a single item requested in discovery. Yet, the Special Master allowed Mother to introduce documents supplied by Father in discovery to attempt to establish Father's earning capacity.

2. The Special Master erred in including wedding gift monies in his calculation of Father's 2014 "income," which he used as Father's earning capacity. In determining income for support purposes, the trial court "may not include income constituting marital property under 23 Pa.C.S. §3501." *Berry v. Berry*, 898 A.2d 1100, 1104 (Pa.Super. 2006).

*See* Father's "Concise Statement of Matters of Appeal." Father raises two issues: (i) evidence of Father's expenses and (ii) the inclusion of the supposed wedding gift.

### (i) Bank Statements

The Court first notes that Father does not challenge the Master's math in establishing his or Mother's monthly net income, nor does he challenge the consequential support calculation based on the parents' combined monthly net incomes. Instead, Father argues is that Mother should not have been able to present documentation of Father's questionable expenses during the hearing, pursuant to this Court's preclusion order, dated August 28, 2015; *see also* T.T., at 4. But this Court's preclusion order only precluded Mother from presenting evidence or testimony *regarding* [Mother's] *additional expenses*. The reason for the preclusion was to prevent Mother from introducing any evidence of her own income and expense which she refused to first supply to opposing counsel during discovery. As Father's counsel readily admits, the Court did not

4

preclude Mother from cross-examining Father. After Father introduced his tax returns and testified about his income, Mother sought to impeach Father's testimony by cross-examining Father with his bank statements. Father did not object to either this line of questioning or to Mother's use of a trial aid. *See generally* T.T., at 44-48.

At the conclusion of the trial, Father seemingly acknowledged the improper expenses on the tax returns before requesting that the Master only hold Father to what was officially claimed on the return. *Id.*, at 139, lines 8-12. Father hypothesized that his income should be determined to be between $10,000 and $30,000 gross per year. This figure is extraordinarily low when considering the number and types of non-business expenses Mother was able to extract during her cross-examination of Father. Evidently, Father feels that the Court was constrained to a figure in this ballpark because Mother never should have been able to question him with documentation, a supposed misfeasance to which she failed to even object. The reasoning fails.

Father also claims he was unable to establish Mother's earning capacity, because he was "severely prejudiced" when Mother failed to answer discovery requests. This is not so. Incredibly, Father chose not to cross-examine Mother about her work or earning history, her expenses, her household, her education, her time in the workforce, and so forth. The answers to all of these questions would have enabled Father to put forth an argument that Mother should be set at a higher earning capacity. Father's choice not to question Mother was his own misstep.

(ii) Wedding Gift

Next, Father argues that this Court improperly included his wedding gift as income when fashioning the child support award. Father argues income for purposes of child support cannot include marital property. He cites 23 Pa.C.S. §3501 and *Berry v. Berry*, 898 A.2d 1100, 1104 (Pa.Super. 2006). But the question is not whether the Master included the gift as income. The

5

question is whether the income was a gift. To be clear, the Master's child support calculation was also a credibility determination. When confronted with suspect transactions, Father repeatedly and quite unpersuasively alleged that the expenses were all a part of his business – a business that sees nearly $200,000 in income, but a business that pays its owner between $10,000 and $30,000 because of the astronomical "cost of goods" the business incurs. These "costs" evidently included trips to casinos, expensive dinners, a tuxedo, fireworks, and hundreds of dollars of prepaid check cards that cannot be traced. Time and time again, Father deflected the questions by saying he only did what his accountant suggested. The Master made a credibility determination, and apparently found Father to be less than truthful. In terms of the wedding gift, Father first testified that he received a $25,000 loan. *See* T.T., at 104. He corrected himself and stated that the sum was a gift, which he and his new wife split equally. *Id.* He testified that he put this gift in his business account, because his other accounts were frozen for nonpayment of support. *Id.* He argues that he did not want to get "jammed up" while trying to pay for the wedding. But because Father comingled virtually all of his income, and because Father's testimony was so blatantly unreliable, the Master did not err when he determined that income in Father's business account should be labeled as income for purposes of child support. Father left the Master with no other choice.

## C. CONCLUSION

When the Court precluded Mother from presenting documentation of her own expenses, it did not grant Father leave to submit a child support recommendation that is more akin to a wish list than an fair read of his finances. Father chose not to question Mother, and in the absence of his cross-examination and in light of this Court's preclusion, the Master was practically bound to the previous support determination. Father's true contention, of course, was Mother's cross-examination of his testimony and evidence. Mother was able to adequately

6

impeach Father's financial documentation and his testimony about his business expenses. In doing so, Mother did not run afoul of this Court's preclusion order. And in light of Father's testimony on cross-examination, the Master did not err when he included the purported "wedding gift" as income.

BY THE COURT:

_Kathryn Hens-Greco_ J.

7