Kelly BELCHER, Appellant,

v.

Tony BELCHER, Sr., Appellee.

Superior Court of Pennsylvania.

Argued Aug. 30, 2005.
Filed Oct. 31, 2005.

Gerald A. Kinchy, Sayre, for appellant.

Before: HUDOCK, BOWES and BECK, JJ.

OPINION BY BOWES, J.:

¶ 1 Kelly Belcher ("Mother") appeals from a December 24, 2004 order denying her petition for support based on her failure to prove a change in circumstances. We reverse the order and remand for proceedings consistent with this decision.

¶ 2 Mother instituted this support action on March 25, 2004, against Tony Belcher, Sr. ("Father") seeking child support and medical expenses for her minor children by Father: James, born on August 3, 1991, and Tony, born on June 17, 1993. In the complaint, Mother alleged that the parties were married on June 18, 1988, separated on March 1, 2004, that her weekly gross pay as a hairdresser was $100, and that she received Father's last support payment in the amount of $100 on March 12, 2004.

¶ 3 On April 7, 2004, Mother filed a petition seeking primary physical custody and sole legal custody of the parties' children and alleged the following. Mother was residing with her parents while Father remained in the marital home. Following the parties' separation, Father's girlfriend and her four minor children moved in with Father. On March 8, 2004, the parties executed a marital settlement agreement granting shared alternating weekly custody of the children. Mother sought a change of custody due to three changed circumstances: 1) since Father's girlfriend and her four children moved into the home, James and Tony did not have adequate sleeping quarters; 2) Father's girlfriend was unkind to James and Tony; and 3) a dog that Father acquired after separation urinated on the children's clothing. In response, Father denied these three allegations and sought primary physical custody.

¶ 4 On May 4, 2004, the support matter was referred to a master, and the trial court entered an interim support order awarding Mother $142.82 a week in support based on its determination that Mother's monthly income was $490.77 and that Father's net monthly income was $2,525.29.

¶ 5 On May 10, 2004, Mother filed a petition to enforce the March 8, 2004 marital settlement agreement, alleging that it was entered as an order of court on April 29, 2004, in the divorce action. The agreement, which was attached as an exhibit to the petition, provided that Father was to be deeded the marital home and indemnify Mother for all debts related to it. Mother specifically retained the "right to use of the portion of the house that is the beauty shop" until Father elected to sell the house. Agreement, 3/8/04, at ¶ 12. Father assumed credit card debt, debt on a motorcycle, and debts owed by his corporation. Father agreed to either refinance that debt in his individual name or to have Mother released from the debt within forty-five days, to pay Mother's legal fees, and to pay Mother the sum of $18,500 as well as one month's rent and security deposit not to exceed $1,000. Mother was required to discharge debt on a car from the $18,500. Father received the marital home, valued at $180,000, three vehicles, and one hundred percent of the corporation, Belcher & Sons, Inc.

¶ 6 In her petition to enforce, Mother alleged that Father had breached the marital settlement agreement by failing to extinguish any debt, to obtain Mother's release from that debt, and to pay her and her attorneys the money owing to them. Finally, Mother alleged that after execution of the agreement, Father "went into [Mother's] beauty shop without her consent and removed equipment necessary for the operation of her business, thereby rendering it impossible to operate the business at the home beauty shop." Petition to Enforce Agreement, 5/10/04, at ¶ 5.

¶ 7 On May 24, 2004, the court granted the petition to enforce the agreement, directing Father to make all reasonable efforts to complete his obligations, return the beauty shop equipment to Mother, and pay weekly interest on the $18,500. The court also directed Mother to execute the deed to the marital home, which was to be held in escrow until Father completed his obligations under the agreement. Father never complied with this order. Thus, the beauty equipment was not returned to the business.

¶ 8 On June 10, 2004, a master conducted a hearing on the pending child support matter. The following evidence was received regarding the parties' respective incomes. In January 2004, Mother started employment as a hairstylist on a commission basis at Dreamy Daze Salon in Wyalusing. She receives fifty percent of the service charges and tips. From the inception of her work to the hearing date, Mother netted $1,895.37 after taxes plus $65 in tips. Mother earned $351 from the salon that she operated from her home in 2003, which was the same year she started that business.

¶ 9 Father was self-employed by Belcher & Sons, Inc., which he wholly owns, at a stone quarry, and he also owns quarry equipment in his own name. In 2003, Bel-cher & Sons, Inc. paid him wages of $31,200 and $73,094 to rent the equipment. Father also rented the equipment to third parties and had rental income of $8,448 from those sources. The actual expenses charged against the rental income totaled $2,282. Thus, Father's net monthly income was approximately $8,400 per month as compared to Mother's $300 net monthly income.

¶ 10 The master recommended that Mother's petition for modification of the amount of child support delineated in the agreement be denied because Mother had failed to prove the existence of a change in circumstances between March 8, 2004, when the agreement was executed and March 25, 2004, when the request for modification was filed. Mother filed exceptions, and the trial court adopted the master's recommendation, rejecting Mother's contention that Father's removal of the beauty salon equipment immediately after executing the marital settlement agreement constituted a change in circumstances. The court reasoned that Mother did not establish that those actions affected her income potential. This appeal followed.

¶ 11 On appeal, Mother assails the trial court's conclusion that she failed to establish a change in circumstances warranting modification of child support. As we agree with this contention, we do not address her two remaining challenges to the trial court's decision.

¶ 12 We begin our analysis with 23 Pa.C.S. § 3105(b), effect of agreement between parties, which provides that: "A provision of an agreement regarding child support, visitation or custody shall be subject to modification by the court upon a showing of changed circumstances."

¶ 13 We recite our standard of review:

"When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground." *Calabrese v. Calabrese,* [452 Pa.Super. 497,] 682 A.2d 393, 395 (1996). We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. *Id.* An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. *Depp v. Holland,* [431 Pa.Super. 209,] 636 A.2d 204, 205–06 (1994); *See also Funk v. Funk,* [376 Pa.Super. 76,] 545 A.2d 326, 329 (1988). In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests. *Depp,* [431 Pa.Super. 209,] 636 A.2d at 206.

*Samii v. Samii,* 847 A.2d 691, 694 (Pa.Super.2004) (quoting *Laws v. Laws,* 758 A.2d 1226 (Pa.Super.2000)); *accord McClain v. McClain,* 872 A.2d 856 (Pa.Super.2005). The party seeking modification has the burden of establishing that current conditions differ from those in existence when the child support arrangements were reached. *McClain, supra.*

¶ 14 In the present case, we are constrained to conclude that the trial court's decision was an abuse of discretion. We note the irrefutable existence of two essential facts. First, when the agreement between the parties was executed on March 8, 2004, it unequivocally allowed Mother, who was then working at Dreamy Daze Salon, to return to use her fully-equipped beauty salon at the marital home without the payment of rent. Second, immediately after he signed the agreement, Father removed all of the beauty equipment so that Mother could not operate her business. This action was a clear violation of the agreement between the parties and constituted a change in circumstances warranting modification because: 1) when the March 8, 2004 agreement was negotiated, Mother clearly wanted to return to that business despite the fact that she was then employed at Dreamy Daze Salon; and 2) Father's actions prevented her return to that business. Once Father removed the equipment, there was a change in circumstances from those envisioned in the March 8, 2004 agreement. *See generally Shutter v. Reilly,* 372 Pa.Super. 251, 539 A.2d 424 (1988) (change in custodial arrangements constituted change in circumstances warranting revision of support); *Forry v. Forry,* 359 Pa.Super. 602, 519 A.2d 516 (1986) (where various circumstances existing when support award was entered had been altered, change was warranted).

¶ 15 We are not convinced that Mother was required to prove, in light of this breach of the agreement, that Father's actions reduced her income potential. Nevertheless, to the extent that she was required to do so, we cannot agree with the trial court's secondary conclusion that Father's actions did not affect that capacity. Mother testified that at Dreamy Daze Salon, she receives only one-half of the service fees charged to her customers. As of March 8, 2004, Mother was contractually permitted to return to her home business. That fully-equipped business could be operated without the payment of rent. Therefore, other than nominal output for beauty supplies, Mother was to return to an expense-free environment and would have been able to keep 100% of all amounts charged to her customers, doubling her earning potential.

¶ 16 We are aware that Mother's 2003 income from her home business was not overwhelming. However, Mother's unrebutted testimony was that she had just started that business during 2003 and that she hoped to expand her client base. Indeed, it would not have made sense for Mother to specifically negotiate a return to her home business on March 8, 2004, when she was employed by Dreamy Daze Salon, if she had not envisioned an increased earning potential. Hence, we reverse the trial court's conclusion that there was not a change in circumstances and remand for recalculation under the support guidelines of the amount of support Father owes to Mother from March 25, 2004. This recalculation is to be based on the numerical evidence introduced at the master's hearing.

¶ 17 Order reversed. Case remanded. Jurisdiction relinquished.