J-A05040-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MEGAN S. RODGERS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RYAN J. MURPHY, | |
| Appellant | No. 2018 EDA 2014 |

Appeal from the Order Entered June 11, 2014,
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): DR NO. 13-09976 PACSES NO. 945114108

BEFORE: GANTMAN, P.J., SHOGAN, and ALLEN, JJ.

MEMORANDUM BY SHOGAN, J.: **FILED MARCH 31, 2015**

Ryan J. Murphy ("Father") appeals from the order setting the amount of monthly child support he is obligated to pay to Megan S. Rodgers ("Mother"). We affirm.

We summarize the facts of this case as follows. Mother and Father married in April of 2011. Thereafter, Mother gave birth to Son. Mother and Father separated in February of 2013. In July of 2013, Mother filed for divorce. On July 22, 2013, Mother filed a complaint for child support.

A hearing was held before a Master on December 9, 2013.[1] On April 4, 2014, the Master issued a proposed order of child support. The

---

[1] At the time of the hearing, Mother was thirty-two years old, possessed a master's degree, was employed as an autistic support teacher, and lived
*(Footnote Continued Next Page)*

Master estimated Father's earning capacity to be $30,000.00 per year, and proposed that Father pay Mother $741.00 per month for support, plus $34.00 per month for arrears, for a total child support payment of $775.00 per month. That amount also included a contribution by Father towards the total sum of $245.00 that Mother spent for weekly childcare expenses at a daycare facility. Father timely filed exceptions to the proposed order. The trial court held argument on Father's exceptions, relied on the Master's findings of credibility, and denied Father's exceptions. Father filed this timely appeal. Father and the trial court complied with the requirements of Pa.R.A.P. 1925.

Father presents the following issues for our review:

1. Did the Trial Court err in confirming the Master's assignment to Father of an earning capacity of $30,000.00 per year, as that earning capacity was inconsistent with his earnings history, his education and current and recent income experience, and disregarded his efforts at obtaining higher-paying full-time employment, which were limited by his familial responsibilities to his ailing father, and the potential for higher earnings with the company in the future?

2. Did the Trial Court err in confirming the Master's acceptance and allocation of the childcare expense of $245.00 per week, for a choice of daycare on which Father was not consulted and where Father could provide alternate and far less expensive childcare, and the child primarily resides with Mother and her parents who, with Father and Father's mother, had previously

_(Footnote Continued)_ ─────────────

with Son at the home of Mother's parents. Father was thirty-nine years old, had a high school diploma, had served a few years in the United States military, was employed as a taxi driver, and lived in an apartment with his mother.

shared childcare responsibilities particularly where the expense constitutes [an] unreasonable burden on Father?

3. Did the Trial Court and the Master err in failing to consider that, while Father rented an apartment and financially assisted his elderly mother who resided with him, Mother lives with her parents in their home and has no expenses with regard to rent, maintenance or utilities and hence deviate from the guideline support as provided by the Rules?

Father's Brief at 2-3.

Father first argues that the trial court erred in confirming the Master's assignment of a $30,000.00 annual earning capacity to Father. Father claims that the earning capacity attributed to him is inconsistent with his recent earnings history, education, training and income experience.

We address this issue mindful of the following standard of review:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

*R.C. v. J.S.*, 957 A.2d 759, 761 (Pa. Super. 2008) (quoting *Belcher v. Belcher*, 887 A.2d 253 (Pa. Super. 2005)) (citations and quotation marks omitted). A finding of an abuse of discretion is not lightly made but must be based only upon a showing of clear and convincing evidence. *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003).

> [T]he duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests. The principal goal in child support matters is to serve the best interests of the child through provision of reasonable expenses. The duty of child support, as every other duty encompassed in the role of parenthood, is the equal responsibility of both mother and father. That duty is absolute.

*R.C.*, 957 A.2d at 763 (citations and quotation marks omitted).

In Pennsylvania, an award of child support is based upon the Child Support Guidelines promulgated by our Supreme Court. The guidelines were enacted to ensure "that persons similarly situated shall be treated similarly." 23 Pa.C.S. § 4322(a). "In determining the . . . ability of the obligor to provide support, the guidelines shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention." *Id*.

A person's earning capacity is defined not as the amount which the person could theoretically earn, but as that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training. *Gephart v. Gephart*, 764 A.2d 613, 614-615 (Pa. Super. 2000). This Court has held that where a parent has not voluntarily reduced income to avoid more lucrative career opportunities, but has consistently performed a lower paying job from before the birth of a child, the trial court did not abuse its discretion in calculating

earning capacity based upon the lower paying job. ***Dennis v. Whitney***, 844 A.2d 1267, 1270 (Pa. Super. 2004).

The trial court offered the following analysis pertinent to Father's claim regarding the assignment of his earning capacity:

> [Father] contends that the trial court erred in confirming the Master's assignment of an earning capacity of $30,000 per year to [Father]. . . . The assessment of an earning capacity in support matters is governed by Pa.R.C.P. 1910.16-2(d)(4), which provides that, "If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity." The Rule further provides that the factors to be considered in determining an earning capacity are "age, education, training, health, work experience, earnings history and child care responsibilities." ***Id***.
>
> In the instant case, the Master took special note in her Report of the fact that [Father] has been "unable to maintain long term employment in the various fields that he has experience since 2010." (See Report of Master in Support for child support, p. 6), ("Report for child support"). Accordingly, the Master was not convinced "that [Father] is diligently working towards finding appropriate and consistent employment and instead is looking for *opportunities* that will afford him with large pay-outs, status or the ability to be his own boss." (See Report for child support, p. 6).
>
> Having made the determination that [Father] willfully failed to obtain appropriate employment, the Master next took into consideration the relevant factors pursuant to Pa.R.C.P. 1910.16-2(d)(4) in order to determine an earning capacity. Given that [Father] is thirty-nine years old and in good health, the Master took into consideration [Father's] various jobs, the longest having lasted five or six years when he was employed in the mortgage finance industry in Arizona in 2003 (N.T.[, 12/9/13,] at 74, 77-78), and his employment for an estate service as a contractor doing clean outs for one and one-half to two years. (See Report for child support, p. 5) (N.T. at 38-39). At the time of the hearing, [Father] had been employed as an independent contractor for a limousine service for six (6) weeks,

but had also interviewed for a job with a commercial lending institution and had been offered a sales management job. (See Report for child support, p. 5). The Master noted in her Report that when questioned about the job offer in sales management, [Father] did not know the name of the company or the salary range for the job. (See Report for child support, p. 5), (N.T. at 74-76). The only income information provided by [Father] was his 2012 federal tax return which showed W-2 wages of $10,577 while employed as an assistant to a real estate agent[.] (See Ex. H-2 to Report for child support), (N.T. at 71-72). The Master took note of the fact that [Father] stated that he had additional income in 2012 from his work with Dan Donohue Estate Service, but that this income was not reflected on his 2012 tax return as he was paid under the table on a cash basis. (Report for child support, p. 5), (N.T. at 57, 71-72). Based on the inconsistencies of [Father's] testimony and the evidence of record of [Father's] employment history, the Master arrived at an earning capacity assessment of $30,000 annually or $576.92 per week.

We find the Master's determination that [Father] has willfully failed to obtain appropriate employment and the Master's assessment of an earning capacity of $30,000 annually for [Father] to be supported by the record. The Master specifically determined that [Father] lacked credibility with regard to his willingness to seek employment commensurate with his job experience. This court will not disturb the credibility determination of the Master who had the opportunity to observe the demeanor of the parties and where the record provides ample support. Further, we find the earning capacity assessed by the Master to be within a range that [Father] could realistically earn as it is based on his past work experience. A review of the record of the Master's hearing shows that [Father] earned $500 to $800 a week working in his past job for Dan Donohue Estate Services[.] (N.T. at 37). He testified that he had earned a total of $5,665.72 for a six week period at his current job as a limousine driver[.] (*Id*. at 61-62) (See also Exhibit H-1, Report for child support). In 2003, he had earned $5000 to $6000 per month working for Wells Fargo as a mortgage loan officer[.] (N.T. at 66-67). In spite of the fact that [Father] was less than candid about his past and current employment ventures, this Court finds that the Master did not err in her assessment of [Father's] earning capacity.

Trial Court Opinion, 8/22/14, at 5-8.

Our review of the certified record reflects ample support for the Master's and the trial court's ultimate determination of a $30,000.00 earning capacity for Father. Indeed, based upon Father's previous earnings and work experience, the assignment of a $30,000.00 earning capacity to Father is conservative. Therefore, the trial court did not abuse its discretion in this regard. Accordingly, Father's contrary claim lacks merit.

In his second issue, Father argues that the Master and the trial court erred in accepting, without sufficient documentation, Mother's claim that she expends a total of $245.00 per week in childcare expense. Father further contends that Mother enrolled Child in daycare without consulting Father or obtaining his consent, alleging that family members could provide daycare for several days per week at no cost.

Again, we observe that our review is limited to ascertaining whether there is sufficient evidence to sustain the trial court's order and whether there has been an abuse of discretion. **Mooney v. Doutt**, 766 A.2d 1271, 1276 (Pa. Super. 2001) (citing **Stredny v. Gray**, 510 A.2d 359 (Pa. Super. 1986)). Pennsylvania Rule of Civil Procedure 1910.16-6 addresses adjustments to support obligations and provides in relevant part as follows:

> **Rule 1910.16-6. Support Guidelines. Adjustments to the Basic Support Obligation. Allocation of Additional Expenses**
>
> Additional expenses permitted pursuant to this Rule 1910.16-6 may be allocated between the parties even if the parties incomes do not justify an order of basic support.

> **(a) Child care expenses.** Reasonable child care expenses paid by either parent, if necessary to maintain employment or appropriate education and pursuit of income, shall be allocated between the parties in proportion to their net incomes and added to his and her basic support obligation.

Pa.R.C.P. 1910.16-6(a).

Our review of the record reflects that Mother testified that she pays $245.00 per week in child care expenses. N.T., 12/9/13, at 14. In addition, Mother presented documentation from Son's daycare service provider reflecting that tuition for a two-year-old child is $245.00 per week. Report of Master in Support, 4/4/14, at W-2 (Docket Entry 5). Thus, we conclude that there was sufficient evidence in the record to support the determination of the weekly child care expense of $245.00, and that the trial court did not abuse its discretion in this regard.

Concerning Father's allegation that the child care expense is unnecessary because Son's grandmothers could provide child care for Son, and that Mother enrolled Son in daycare without consulting Father, our review of the record reflects otherwise. The record indicates that Son attended daycare prior to the parties' separation. Specifically, the parties separated in February of 2013, and Son had been enrolled in daycare since August of 2012. N.T., 12/9/13, at 5, 152-153. The record further reveals that, although prior to August of 2012 the grandmothers did babysit Son for several days of the week, the task had become too difficult for the grandparents, and the decision was made by the parties prior to August of

2012 to enroll Son in a daycare program. *Id*. at 146-152. Therefore, we conclude that there was sufficient evidence in the record to support the determination that the child care expense was necessary, and that the trial court did not abuse its discretion. Accordingly, Father's challenge to the award of child care expenses lacks merit.

In his final issue, Father argues that the trial court and the Master erred in failing to deviate downward from the support guidelines based upon the parties' actual living expenses. Father claims that Mother lacks household expenses because she lives with her parents, yet Father lives with his mother and expends a significant portion of his income towards their housing expenses.

In addressing this claim, we are cognizant that the overarching purpose of child support is to promote the child's best interest. ***Arbet v. Arbet***, 863 A.2d 34, 39 (Pa. Super. 2004). Moreover, the appropriate award for child support

> shall be determined in accordance with the support guidelines which consist of the guidelines expressed as the child support schedule set forth in rule 1910.16-3, the formula set forth in 1910.16-4 and the operation of the guidelines as set forth in these rules.

Pa.R.C.P. 1910.16-1(b). The child support schedule provides a table indicating the appropriate amount of support depending upon the parties' combined income and the number of children. Pa.R.C.P. 1910.16-3. The

formula establishes what percentage of the total support determined from the schedule for which each party will be responsible.  Pa.R.C.P. 1910.16-4.

The guidelines were established to bring more predictability to discretionary aspects of child support determinations:

> [T]he support guidelines are the Legislature's response to the Federal Government's mandate that States establish mandatory guidelines for determining child support.  **See** Introduction to the 1998 Explanatory Comment, Pa.R.C.P. 1910.16-1, 42 Pa.C.S.A.; 42 U.S.C. § 667(a).  This statute replaced a discretionary system and was enacted to create greater uniformity, predictability and equity in determining child support awards, while at the same time maintaining a degree of judicial discretion necessary to address unique circumstances.  **See** Explanatory Comment-1998 to Rule 1910.16-1 (stating purpose of guidelines is to promote "(1) similar treatment of persons similarly situated, (2) a more equitable distribution of the financial responsibility for raising children, (3) settlement of support matters without court involvement, and (4) more efficient hearings where they are necessary.")

**L.S.K. v. H.A.N.**, 813 A.2d 872, 879 (Pa. Super. 2002) (citing **Colonna v. Colonna**, 788 A.2d 430 (Pa. Super. 2001)).  Further, the guidelines are presumed to be correct, as evidenced by the following:

> **(d) Rebuttable Presumption.**  If it has been determined that there is an obligation to pay support, there shall be a rebuttable presumption that the amount of the award determined from the guidelines is the correct amount of support to be awarded.  The support guidelines are a rebuttable presumption and must be applied taking into consideration the special needs and obligations of the parties.  The trier of fact must consider the factors set forth in Rule 1910.16-5.  The presumption shall be rebutted if the trier of fact makes a written finding, or a specific finding on the record, that an award in the amount determined from the guidelines would be unjust or inappropriate.

Pa.R.C.P. 1910.16-1(d). Thus, the support determined under the guidelines is a rebuttable presumption, from which the trier of fact may deviate under certain circumstances. **Arbet**, 863 A.2d at 42.

"As these rules and the prevailing case law make clear, a court generally has reasonable discretion to deviate from the guidelines if the record supports the deviation." **Silver v. Pinskey**, 981 A.2d 284, 296 (Pa. Super. 2009) (citing **Ricco v. Novitski**, 874 A.2d 75 (Pa. Super. 2005)). As we stated previously, "In determining the . . . ability of the obligor to provide support, the guidelines shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations for **unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention.**" 23 Pa.C.S. § 4322(a) (emphasis added).

Regarding deviation, Pa.R.C.P. 1910-5 provides as follows:

**(a) Deviation.** If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify, in writing or on the record, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of deviation.

**(b) Factors.** In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:

    (1)    unusual needs and unusual fixed obligations;

    (2)    other support obligations of the parties;

    (3)    other income in the household;

- 11 -

(4)    ages of the children;

(5)    the relative assets and liabilities of the parties;

(6)    medical expenses not covered by insurance;

(7)    standard of living of the parties and their children;

(8)    in a spousal support or alimony pendent lite case, the duration of the marriage from the date of marriage to the date of final separation; and

(9)    other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910-5.

In addressing Father's claim that a downward deviation of his support obligation was required and concluding that the requested deviation was not appropriate, the trial court offered the following analysis:

> [Father] . . . avers that both the trial court and the Master erred in failing to consider that while [Father] pays rent for an apartment and cares for his elderly mother who resides with him, [Mother] lives with her parents and has no housing or utility expenses. Pa.R.C.P. 1910.16-5 sets forth the factors allowing for deviation from the presumptive amount under the support guidelines. The Master properly determined that [Father's] expenses and debts are not so unusual or extraordinary as to warrant a deviation from the guidelines. (See Report for child support, p. 6). During the Master's hearing, [Father] testified that his Mother lives with him and contributes to the monthly rent of $930 and that his portion of the monthly rent is $400-$500. (N.T. at 42). [Father] further testified that his total monthly household expenditures are approximately $800. (Id. at 42-43). In addition, [Father] testified that he had no debts or obligations other than a private loan in the amount of $8,663 towards which he makes payments when he can afford to [pay].

(Id. at 43-44). Based on the testimony and evidence of record, we concur with the Master's finding.

Trial Court Opinion, 8/22/14, at 8-9.

Our review of the record reflects ample support for the trial court's determination that Father failed to rebut the presumption that the guideline amounts were appropriate. Indeed, Father's own testimony before the Master indicated that at the time of the hearing he was living in an apartment with his mother and they shared living expenses. N.T., 12/9/13, at 42. The only residents of the household were Father and his mother. *Id*. When asked how much he was contributing toward the household, Father replied:

> Ah, I'm paying – let's see – the rent is 930, I'm paying about four to five of that, plus electric, cable – ah – so, I'm probably spending, roughly, about six hundred a month.

*Id*. Father then offered the following clarification of his household expenses:

> [FATHER]: Oh – oh, excuse me, a question, am I supposed to include food and everything like that, ma'am?
>
> THE MASTER: Yes.
>
> [FATHER]: Oh, yeah, I take care of all the groceries and everything else in the household, so then, that would take it up, probably, close to – I'd say, probably eight – all the prescriptions – all everything.
>
> My mother doesn't have very much and my father just passed away in June and I'm trying to catch up on everything and so, she's my responsibility as well as all my other ones.

*Id*. at 42-43. Thus, Father offered testimony that his contribution for household expenses was approximately $800.00 per month. Father also

- 13 -

indicated that he has no other children under the age of eighteen, has no credit card debt, and has no student loans. *Id*. at 43. In addition, Father testified that he has an obligation in the form of a private loan in the amount of $8,663.00, and he makes payments on the loan based upon what he can afford to pay. *Id*. at 44. In light of this testimony presented by Father, we cannot conclude that his stated monthly expenses amount to unusual needs or extraordinary expenses such that they would rebut the presumption that the support guidelines are applicable. Likewise, Father has not established that other factors, such as the parties' assets, would warrant special attention. Hence, it is our determination that the trial court did not err in refusing to deviate downward from the support guidelines in this matter. Accordingly, Father's contrary claim fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/31/2015

- 14 -