J-S28021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| T.M.A., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| L.J.A., | |
| Appellant | No. 1290 MDA 2014 |

Appeal from the Order entered May 29, 2014,
in the Court of Common Pleas of Columbia County,
Domestic Relations, at No(s): DR-00317-13

| | |
|---|---|
| T.M.A., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| L.J.A., | |
| Appellee | No. 1291 MDA 2014 |

Appeal from the Order entered May 29, 2014,
in the Court of Common Pleas of Columbia County,
Domestic Relations, at No(s): DR-00317-13

BEFORE: BOWES, ALLEN, and LAZARUS, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED MAY 28, 2015**

In these cross-appeals, T.M.A. ("Mother") and L.J.A. ("Father") appeal from the trial court's order establishing an allocated award of child and spousal support.

The trial court summarized the pertinent facts as follows:

The facts are that the parties were married on June 17, 2011, and separated on May 20, 2013. They had one child [who was born in 2012]. Just before the first custody conference, custody of the parties' son was changed from primarily with [Mother] to shared custody. [Mother] is employed as an elementary school teacher grossing about $37,600 per year (netting about $2853.21 per month). The parties own a triplex rental. [Mother] pays the mortgage and continues to live in one unit.

[Father] is a skilled nurse. In 2013, he earned $106,000 as a nurse. In 2014, he **voluntarily** changed jobs. He said he wanted more time with his son. He lives in Columbia County with his parents and has shared custody time with the child. He works 24 hours each week and makes about $49,000 per year. At that rate, if he worked forty hours he could make about $70,000 per year. If he fulfilled his actual earning capacity, he could make $106,000 per year, which he was earning when he <u>voluntarily</u> left his job. He voluntarily reduced his income by $57,000 per year, a decrease of over 50%.

Trial Court Opinion, 9/9/14, 3-4 (bold and underline in original).

On October 18, 2013, Mother filed a complaint seeking support for herself and the parties' child. The parties had executed a Marriage Settlement Agreement ("MSA") on or about August 1, 2013, which was to serve "as a full and final settlement of all matters of joint concern for the parties, including all property rights, debts, spousal support, child custody, visitation, and child support." MSA, 8/1/13, at 1. Within the MSA, the parties further asserted "[d]ue to irreconcilable differences the marriage of the parties has been irretrievably broken and there is no possibility of reconciliation." *Id.* at 2.

Pertinent to the present appeals are the following provisions:

9. CHILD SUPPORT

The parties will come to an agreement once [Mother] returns to work after maternity leave beginning Oct. 1, 2013.

Child support payments will commence the 1st day of the month following the entry of a divorce decree. Child Support payment must be paid by the 1st day of the month directly to the custodial parent.

\*\*\*

11.   DIVISION OF ASSETS.   Each party shall receive any and all, tangible and intangible, property in his/her possession unless stated otherwise in this agreement.

a.   **Marital Home.**

The parties agree [Mother] will remain in the home . . . and have sole and absolute ownership of the same.   [Father] will not continue to be bound for all mortgages on the property.

\*\*\*

13.   SPOUSAL SUPPORT/ALIMONY.   [Father] agrees at this time to pay spousal support to cover all monthly and child expenses until October 1, 2013.

MSA, 8/1/13, at 4-6.

A conference was held and an interim order of support was entered. Thereafter, Father filed a request for a *de novo* hearing. On February 13, 2014, a Special Hearing Officer, Michael P. Dennehy, Esquire, took testimony from the parties regarding the support action. That same day, a final order of support was entered, requiring Father to pay $807.75 a month payable bi-weekly via wage attachment effective October 18, 2013. This award was based on the Special Hearing Officer's determination that Mother had a net monthly income of $3,165.17, and that Father's net monthly income was

$4,278.88. The monthly support order was allocated $448.05 for child support, $199.70 for spousal support, and $160.00 for arrears.

When filing his report, the Special Hearing Officer wrote that he used the actual incomes for both of the parties. He noted that "[w]hile [Father] testified to a $49,000 annual income, his hourly rate times number of hours times 52 [weeks] per year yields annual income of $70,661.76." Special Hearing Officer's Report, 2/27/14. Finally, the Special Hearing Officer further noted that union dues and mandatory retirement was deducted from Mother's monthly income, and that the substantial shared custody adjustment applied.

Both parties filed exceptions. Argument on these exceptions was scheduled for May 9, 2014, and a briefing schedule was established. While Mother filed a brief, Father did not. By order entered May 29, 2014, the trial court granted the parties' exceptions in part and denied them in part. In its order, the trial court directed Father to pay Mother $697.08 per month in child support and $218.58 in spousal support. The trial court also directed Father to pay $160.00 per month toward arrears. In all other respects, the trial court affirmed the Special Hearing Officer's report.

In a footnote, the trial court explained:

> This order is based on [Mother's] actual earnings ($37,600.00 per year) and 1/3 of the marital rental income since she is paying the mortgage. (It is assumed that she is not paying the taxes and insurance, otherwise the 1/3 income would not be attributed to her since it would likely all go to the rental taxes and insurance.) The mortgage payment is for a three unit dwelling. She is living in one

unit. [Father's] income is set at $70,661.76 which the court finds to be at least his earning capacity. He only works 39 weeks per year and 24 hours per week. If he would work 52 weeks per year (24 hours per week!), he would make $70,661.76. Importantly, he left a job voluntarily where he was making $106,000 per year. There is some question as to whether an adjustment should be utilized for shared custody. Even if the adjustment applies in this case, an adjustment for shared custody should not and is not utilized for several reasons. First, [Father] has minimal extra expense associated with his custody periods. Second, [Father] has chosen to work part-time (24 hours per week) and, in fact, has chosen to leave a job which pays considerably higher wages. Third, [Mother] continues to provide housing for the child as a permanent residence. Finally, to the extent this order is considered an upward deviation, the same is appropriate for the forgoing reasons.

Order, 5/29/14, at 1, n.1. Following the trial court's denial of Father's motion for reconsideration, Father filed a timely appeal, and Mother filed a timely cross-appeal. Both the parties and the trial court have complied with Pa.R.A.P. 1925.

In his appeal, Father raises the following issues:

1. Whether the Trial Court abused its discretion and committed an error of law in assigning 1/3 of the income from the marital triplex (home) to [Mother] as income when she receives the entire amount each month?

2. Whether the Trial Court abused its discretion and committed an error of law in assigning [Father] an earning capacity of $70,661.76 when his job requires alternative hours and is a significantly better job than his previous position, especially given the benefits available and his availability to care for the minor child?

3. Whether the Trial Court abused its discretion and committed an error of law in awarding spousal support to [Mother] since the calculations based on [Issues] 1 and 2

would effectively eliminate spousal support, and since [Mother] waived the spousal support by written agreement?

4. Whether the Trial Court abused its discretion and committed an error of law in failing to hold a hearing and/or argument on the record with regard to the exceptions?

Father's Brief at 3-4.

In her appeal, Mother raises the following issues:

I. Did the Trial Court err in failing to consider [Father's] exceptions waived where he failed to file a Brief as required by Order of Court [] and the Local Rules of the 26th Judicial District?

II. Should [Father's] appeal of spousal support in the allocated Order of May 29, 2014 be quashed as interlocutory?

III. Did the Trial Court properly assign one third (1/3) of the rental income from the marital triplex to Wife when the entire rental received is applied to the mortgage, maintenance, and upkeep of the triplex?

IV. Did the Trial Court properly award [Mother] spousal support where there was no express waiver of spousal support in the [MSA] signed by the parties and any ambiguity must be construed against [Father]?

V. Did the Trial Court [follow] proper procedure during the May 2014 Exception Argument?

VI. Did the Trial Court err in assigning an annual earning capacity to [Father] of only [$70,661.76] in light of his unwarranted and voluntary reduction of income from [$106,323.71] per year?

VII. In the alternative, did the Trial Court err in failing to assign [Father] an earning capacity based upon a full-time position?

Mother's Brief at 5.

Our standard of review is well settled:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of [that] discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if in reaching a conclusion the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

***Morgan v. Morgan***, 99 A.3d 554, 556-57 (Pa. Super. 2014) (citation omitted).

We first summarily dispose of certain issues raised by the parties. In response to Father's fourth issue and Mother's fifth issue, our review of the certified record reveals that the proceedings in this support action fully complied with the alternative hearing procedure set forth in Pa.R.C.P. 1910.12. Although Father relies on ***Melzer v. Witsberger***, 480 A.2d 991 (Pa. 1984) and ***Caplan v. Caplan***, 583 A.2d 823 (Pa. Super. 1990) to argue otherwise, he does not identify any specific procedural rule from these decisions that required his support action to proceed differently.

Next, in support of her first issue, although Mother correctly cites the pertinent local rule and asserts that Father did not file a brief, she cites no persuasive authority for her claim that all of Father's issues should be considered waived on appeal. Mother cites ***Boniella v. Com.***, 958 A.2d 1069, 1072 n.8 (Pa. Comwlth. 2008), for the proposition that undeveloped

claims will not be considered by an appellate court. Here, however, the trial court considered the merit of Father's exceptions. Thus, we reject Mother's first issue.

Finally, the parties do not dispute the absence of a final divorce decree. As such, their claims relative to spousal support are interlocutory. *See Capuano v. Capuano*, 823 A.2d 995, 998 (Pa. Super. 2003) (explaining that with respect to allocated support orders, while the child support portion is immediately appealable, the portion attributable to spousal support is interlocutory and thus not appealable until a divorce decree is entered and the economic claims of the parties are resolved). Thus, we do not consider further Father's third issue or Mother's fourth issue, and agree with Mother's second issue, which asserts the interlocutory nature of Father's appeal of spousal support.

In their remaining issues, the parties claim that the trial court erred in determining their respective incomes available for support. We first address the calculation of Mother's income. In his first issue, Father contends that the entire $1,200.00 a month in rental income that Mother receives should be included in the determination of her income available for support. *See* Father's Brief at 13-14. In her third issue, Mother asserts that the trial court properly assigned only one-third of the rental income to her. We agree with the trial court.

Rule 1910.16-2 of the Pennsylvania Rules of Civil Procedure governs the calculation of a parent's net income available for support. Included in the definition of "monthly gross income" is "net income from business or dealings in property" and "… rents …" Pa.R.C.P. 1910.16-2(a)(2) and (3).

At the Special Hearing Officer's hearing, Mother presented uncontradicted testimony that she did not derive any net income from the property. *See* N.T., 2/13/14, at 13. She concedes, however, "it is only fair to apportion some of the rent she receives to her since she has use of one of the units in the property which could otherwise be rented." Mother's Brief at 13. The trial court agreed, assigning her one-third of the monthly rental receipts as income. We discern no abuse of discretion. *See e.g.*, *Belcher v. Belcher*, 887 A.2d 253, 255 (noting the master's calculation of the father's net rental income as part of his monthly income available for support).

We next consider the merits of the parties' issues regarding the calculation of Father's income available for support. In support of his second issue, Father asserts that the trial court "erred and abused its discretion in assigning an earning capacity to [him] above his actual earnings where there is clear evidence, as confirmed by the Special Master, that [Father] was losing his hours at his prior employment and his current job at Lankenau [Hospital] provided equivalent income and allowed him to be the primary caretaker of the minor child on weekdays (4 or 5, depending on the week)." Father's Brief at 11. According to Father, the trial court "further failed to recognize any exception to the earning capacity standard in the Rules of Procedure and the nurturing parent doctrine." *Id.*

In her sixth and seventh issues, Mother argues that Father "voluntarily assumed a lower paying, part-time position in order to avoid his support obligations." Mother's Brief at 9. According to Mother, "[Father's] 2013 earnings [of $106,000] should be used as [a] barometer of his earning

capacity." *Id.* at 10. Alternatively, Mother argues that Father "should be assessed with an earning capacity based upon a full-time nursing position. Under no circumstances should [Father] be permitted to have his support [obligation] based upon working only 72 hours every four weeks." *Id.*

"When determining income available for child support, the court must consider all forms of income." *Berry v. Berry*, 898 A.2d 1100, 1104 (Pa. Super. 2006) (citation omitted). Moreover, in determining a parent's ability to provide support, the focus is on earning capacity rather than on a parent's actual earnings. *Reinert v. Reinert*, 926 A.2d 539 (Pa. Super. 2007). Rule 1910.16-2(d)(4) of the Pennsylvania Rules of Civil Procedure provides the domestic relations hearing officer and/or trial court with the methodology to determine whether a party should be assessed an earning capacity. The subsection provides:

**(d) Reduced or Fluctuating Income.**

(1) *Voluntary Reduction of Income.* When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause, there will be generally no effect on the support obligation.

(2) *Involuntary Reduction of, and Fluctuation in, Income.* No adjustments in support payments will be made for normal fluctuations in earnings. However, appropriate adjustments will be made for substantial continuing involuntary decreases in income, including but not limited to the result of illness, lay-off, termination, job elimination or some other employment situation over which the party has no control unless the trier of fact finds that such a reduction in income was willfully undertaken in an attempt to avoid or reduce the support obligation.

- 10 -

(3) *Seasonal Employees.* Support orders for seasonal employees, such as construction workers, shall ordinarily be based upon a yearly average.

(4) *Earning Capacity.* If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain employment, the trier of fact may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(4).

This Court has observed:

It is settled law that a party cannot voluntarily reduce his earnings in an attempt to circumvent his support obligation. In fact, we view any sudden reduction in income with suspicion. Where a party assumes a lower paying job or willfully fails to obtain appropriate employment, the support obligation is determined by his assessed earning capacity.

*Woskob v. Woskob*, 843 A.2d 1247, 1254 (Pa. Super. 2004) (citations omitted).

Here, the trial court, referencing its explanatory footnote in the May 29, 2014 order, found Father to have an earning capacity "of 'at least' $70,661.76." Trial Court Opinion, 9/9/14, at 4. In considering the parties'

exceptions to the calculation of Father's net income, the trial court "acknowledge[d] that [Father] voluntarily left his job which was paying $106,000.00, which should be his earning capacity." *Id.* at 4-5. Thus, the trial court asks this Court to remand the case for re-calculation of Father's support obligation.

Our review of the record supports the trial court. "[T]he trial court, as the finder of fact, is entitled to weigh the evidence and assess the credibility of the witnesses." *Morgan*, 99 A.3d at 559 (citation omitted). The trial court, as fact finder in this case, concluded that Father voluntarily left a higher-paying nursing position. While Father's 2013 income came from two different employment sources, the record does not support Father's assertion that the two jobs equate to more than one full-time position. *See* Father's Brief at 16. Moreover, there are insufficient facts of record to support the application of the "nurturing parent doctrine" to Father. *See generally*, *Frankenfield v. Feeser*, 672 A.2d 1347 (Pa. Super. 1996).

In sum, because our review of the record supports the trial court's determination that Father should be assigned an earning capacity higher than his actual earnings and consistent with past earnings, we remand only for the re-calculation of Father's net monthly income available for support. In all other respects, the trial court's order is affirmed.

Order affirmed in part and reversed in part. Case remanded for proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/28/2015