**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PHILIP B. FLOYD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JULIE C. FLOYD | : | |
| | : | |
| Appellant | : | No. 266 MDA 2020 |

Appeal from the Decree Entered February 21, 2020
In the Court of Common Pleas of York County Civil Division at No(s):
2017-FC-001777-15

BEFORE:  SHOGAN, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED OCTOBER 26, 2020**

Julie C. Floyd (Wife) appeals from the trial court's order adopting the Master's report and recommendation resolving the parties' economic claims in this divorce action.[1]  Upon review, we affirm in part, vacate in part, and remand for further proceedings.

Wife and Philip B. Floyd (Husband) were married in June 2007, and are the parents of three minor children.  Husband is employed at an insurance agency, where he has worked for 15 years.  Approximately six months into the parties' marriage, in January 2008, Wife became a registered nurse. However, following the birth of the parties' second child in 2012, Wife stopped

---

[1] Wife has separately appealed, at 1564 MDA 2019, from the trial court's order awarding Wife child and spousal support.  We address and dispose of that appeal in a separate memorandum.

working as a nurse to care full-time for the parties' children.  In September

2017, after approximately 10 years of marriage, the parties separated.

The divorce master (Master) recounted the ensuing procedural history:

> A Complaint in Divorce was filed on September 20, 2017.  Robert A. Kulling, Esq., was appointed Master on April 22, 2019 to hear the issues of equitable distribution, alimony, counsel fees, costs and expenses.  A preliminary conference was held on May 23, 2019.  A settlement conference was held on July 16, 2019.  The parties were unable to reach a settlement in this matter and a hearing was scheduled for August 28, 2019.  The hearing was continued by the master and held on September 20, 2019.  In addition to issues related to the master's appointment, Husband argue[d] that Wife's conduct was dilatory, obdurate and vexatious pursuant to 42 Pa.C.S. § 2503(7).

Report and Recommendation of the Master, 10/31/19, at 1.

At the time of the hearing, Husband was 48 years old and Wife was 43

years old; both parties represented to the court that they were in good health.

Pursuant to a prior support order, Husband's annual income was determined

to be $239,593, based upon paystubs, tax returns and social security

statements submitted by the parties.  Wife had recently accepted a position

as a full-time school nurse at the Bermudian Springs School District.  As to

her income, the Master determined:  "Effective 4/1/2019 Wife's earning

capacity was $0.  Effective 9/1/2019 and 10/1/2019, Wife's earning capacity

was/is $35,500.  Effective 1/1/2020, Wife's earning capacity will be $53,500."

*Id.* at 4.

Following a hearing, the Master recommended equitable distribution as

follows:

- 2 -

For the reasons set forth above, the master recommends that the net marital estate should be distributed 54% to Wife as shown in the following table:

| Asset | Value | To H | To W |
|---|---|---|---|
| Mt. Zion proceeds [(the former marital residence)] | $16,354 | | $16,354 |
| [Wife's] 2011 Odyssey | $7,700 | | $7,700 |
| [Husband's] 2012 Avalon | $0 | $0 | |
| M[ember's] 1st FCU Chk/Sav | $8,610 | $3,508 | $5,102 |
| First National Bank | $559 | $559 | |
| M[ember's] 1st Kids Club | $3,458 | $3,458 | |
| Ameritas Life | $684 | | $684 |
| Money (W parents) | $0 | $0 | $0 |
| [Wife's] Wellspan Pension | $17,662 | | $17,662 |
| [Husband's] Voya 401(k) | $320,733 | $205,733 | $115,000 |
| [Wife's] Charles Schwab IRA | $91,900 | | $91,900 |
| SSGA Upromise 529 | $1,386 | | $1,386 |
| Furnishings/Personalty | $9,529 | $6,428 | $3,101 |
| Disney Chase | $0 | $0 | $0 |
| Members 1st Visa | $0 | $0 | $0 |
| York Hospital Bills | $-2,967 | $-2,967 | |
| Total: | $475,608 | $216,719 | $258,889 |
| Percentage: | | 46% | 54% |

*Id.* at 13-14.

With respect to alimony, the Master discussed the 17 statutory factors pursuant to Section 3701(b) of the Divorce Code. Notably, the Master acknowledged that Husband will be earning significantly more than Wife following the parties' divorce. The master determined that the parties' income disparity "favors an award of alimony." *Id.* at 15. Wife's role as primary caretaker of the parties' three minor children also supported an award of alimony, though the Master noted that the children's expenses would be addressed in a separate child support order. *Id.* at 16. Moreover, although the parties testified that they enjoyed a "seemingly comfortable standard of living," the Master found that "though comfortable, the parties lived at or above their [means], leaving little in way of savings." *Id.* Finally, in discussing the relative needs of the parties, the Master concluded that alimony was appropriate, "but for a short period of time." *Id.* at 18-19.

Following discussion of the 17 statutory factors for alimony, and considering that Wife was to receive 54% of the marital estate in equitable distribution, the Master recommended that Wife receive $530 per month in alimony for one year. With respect to counsel fees, costs and expenses, the Master determined that "neither party provided testimony nor evidence regarding the desire for counsel fees, costs and expenses." *Id.* Specifically as to Husband's motion for sanctions, the Master found that there was a lack of evidence to suggest that the conduct of Wife or her counsel was dilatory, vexatious or obdurate. Accordingly, the Master did not recommend sanctions pursuant to 42 Pa.C.S.A. § 2503(7).

On November 18, 2019, Wife filed exceptions to the Master's report and recommendation;[2] Husband filed cross-exceptions on November 19, 2019. Both parties filed briefs in support of their exceptions and in opposition to cross-exceptions. On January 15, 2020, the trial court adopted the Report

_____

[2] Although the trial court states, incorrectly, that "[n]either Wife nor Husband filed any exceptions to the Master's Report and Recommendation," Trial Court Opinion, 3/16/20, the record indicates that both parties filed exceptions. They also filed briefs in support of and in opposition to the exceptions. On January 9, 2020, the trial court entered an order confirming that exceptions were filed, the time to file briefs had expired, and "the matter was assigned to the Honorable N. Christopher Menges for disposition. If you would like the Judge to consider oral argument, file a request for oral argument with the assigned judge." Order, 1/9/20. The parties did not request oral argument. On January 15, 2020, the court entered an order stating "the Report and Recommendation of the master dated October 30, 2019, is hereby adopted as the FINAL ORDER of this Court **with respect to all issues addressed therein.** The parties are directed to take such steps as may be necessary to implement the master's recommendation forthwith." Order, 1/15/20 (emphasis added). Although the trial court did not expressly state it was denying exceptions, the intent and implication is clear, such that the January 15, 2020 order was a *de facto* denial of both parties' exceptions. **See Weir v. Weir**, 631 A.2d 650, 653 (Pa. 1993) (citing **McCormick v. Northeastern Bank of Pennsylvania**, 561 A.2d 328, 330 n.1 (Pa. 1989)) ("in the interests of judicial economy, we may disregard a defect of this type and 'regard as done that which ought to have been done'").

and Recommendation of the Master. Wife filed a notice of appeal on February 13, 2020.[3] On February 21, 2020, the trial court issued a decree in divorce.[4]

Wife raises ten issues on appeal, which we have reordered as follows:

I.  Did the [t]rial [c]ourt err in failing to find that Wife had pre-marital retirement funds of $20,533.37 from Amundi Pioneer?

II.  Did the [t]rial [c]ourt err in failing to award Wife a 60/40 division of assets, when her standard of living, income and prospects for future income are so much lower than Husband's who earns five (5) to ten (10) times what Wife earns?

III.  Did the [t]rial [c]ourt err in failing to find that Husband received $11,040.61 from Member's 1st (and after netting out the money taken from the child's account), while Wife only received $5,102.27 from said accounts?

IV.  Did the [t]rial [c]ourt err in failing to assign credit card debt to Husband who is clearly in a superior position to pay the same?

V.  Did the [t]rial [c]ourt err in failing to account for Wife's payment of eight (8) months of the HELOC while Husband lived in the premises?

---

[3] A pre-divorce order of equitable distribution is not a final order. **Campbell v. Campbell**, 516 A.2d 363, 365.  While "[t]he courts of common pleas have been given [subject matter] jurisdiction to hear and decide divorce actions and related economic claims[,] . . . [t]o enter a decree of equitable distribution prior to a divorce decree . . . is improper. **Reese v. Reese**, 506 A.2d 471, 474 (Pa. Super. 1986).  Here, Wife filed her notice of appeal from the trial court's order before the order was made final by the entry of the divorce decree.  Nevertheless, because a divorce decree has been entered, we have jurisdiction over this appeal.

[4] Both Wife and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

VI. Did the [t]rial [c]ourt err in crediting [Husband] with medical bills when there was no proof of payment of the same and as sole wage earner of the family, that he should have been solely responsible to pay the same?

VII. Did the [t]rial [c]ourt err in unilaterally reducing Wife's expenses and only granting alimony of $530.00 per month for a duration of only one (1) year after divorce?

VIII. Did the [t]rial [c]ourt err in finding Wife's earning capacity to be in excess of $50,000.00 per year when she clearly is not, and cannot earn the same and raise three (3) children?

IX. Did the [t]rial [c]ourt err in ignoring the fact that Wife has been out of the work force for over eight (8) years?

X. Did the [t]rial [c]ourt err in overlooking Wife's health care costs which were provided in her employment exhibits and testimony?

Wife's Brief at 5-6.

In addressing Wife's issues, we are guided by the following:

We review a challenge to the trial court's equitable distribution scheme for an abuse of discretion. ***Brubaker v. Brubaker***, 201 A.3d 180, 184 (Pa. Super. 2018) (citation omitted). "We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence." ***Id.*** We will not find an abuse of discretion "unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." ***Carney v. Carney***, 167 A.3d 127, 131 (Pa. Super 2017). When reviewing an award of equitable distribution, "we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." ***Hayward v. Hayward***, 868 A.2d 554, 558 (Pa. Super. 2005). When determining the propriety of an equitable distribution award, this Court must consider the distribution scheme as a whole. ***Mundy v. Mundy***, 151 A.3d 230, 236 (Pa. Super. 2016). "We do not evaluate the propriety of the distribution order upon our agreement with the court's actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we

look at the distribution as a whole in light of the court's overall application of the 23 Pa.C.S.A. § 3502(a) factors for consideration in awarding equitable distribution. If we fail to find an abuse of discretion, the order must stand." **Harvey v. Harvey**, 167 A.3d 6, 17 (Pa. Super. 2017) (citation and internal brackets omitted). Finally, "it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence." **Brubaker**, 201 A.3d at 184 (citation omitted).

**Hess v. Hess**, 212 A.3d 520, 523 (Pa. Super. 2019).

In her first issue, Wife asserts the trial court erred in failing to find that her Charles Schwab IRA account contained a premarital component. Prior to the marriage, Wife held shares with Amundi Pioneer valued at $20,533.37. Wife maintains that those shares were used to fund her Charles Schwab IRA when she opened the account during the marriage. The Master stated that because "Wife has been unable to provide a roll-over statement showing the transfer from Amundi to Charles Schwab . . . the [M]aster cannot definitely determine that the Charles Schwab is a non-marital asset." Report and Recommendation of the Master, 10/31/19, at 6. Accordingly, the Master determined that for purposes of equitable distribution, Wife's entire Charles Schwab IRA account, valued at $91,900, was marital. Wife filed exceptions to the Master's ruling, which the trial court denied.

Our review of the record reveals that both Husband and Wife testified that Wife's Charles Schwab IRA account contained a premarital component. Specifically, Husband testified:

[Counsel for Husband]: . . . Do you have any separate CDs, mutual funds, investment accounts, et cetera?

- 8 -

[Husband]: I do not.

[Counsel for Husband]: However, your wife does have an IRA, correct?

[Husband]: That is correct.

**[Counsel for Husband]: And do you agree that a portion of that IRA was funded by some premarital assets that she had?**

**[Husband]: Some of it, yeah.**

**[Counsel for Husband]: I believe it's from Amundi, A-M-U-N-D-I, Pioneer. Do you agree with that?**

**[Husband]: Yes, sir.**

N.T., 9/20/19, at 52 (emphasis added).

Wife similarly testified:

[Counsel for Wife]: . . . You have a Charles Schwab IRA?

[Wife]: Yes.

[Counsel for Wife]: And the monies that are in the Charles Schwab IRA, where did they emanate from?

[Wife]: During marriage or before marriage?

[Counsel for Wife]: Well, before marriage?

**[Wife]: Well, before marriage, I had made some deposits, from my own working, whenever I was working before marriage, and then I hadn't contributed to it for years and years and years, and then the companies changed hands several times, so we had to roll over money.**

[Counsel for Wife]: Maybe it's easier to take a look at [Wife's] Exhibit 5. It appears to be a letter from Amundi Pioneer.

[Wife]: Yes.

[Counsel for Wife]: Did you obtain that letter at my request?

[Wife]: Yes.

[Counsel for Wife]: Did it indicate the values of these accounts on June 15th, 2007?

[Wife]: Yes.

[**Counsel for Wife]: And is it your position that the values that are suggested there are all premarital values?**

**[Wife]: Yes.**

**[Counsel for Wife]: And is it your position that the values that are suggested there are all premarital values?**

**[Wife]: Yes.**

**[Counsel for Wife]: And with respect to [Wife's Exhibit 4], does that indicate the current values of those funds at Charles Schwab?**

**[Wife]: Yes.**

*Id.* at 108-09 (emphasis added).

The parties do not dispute that Wife's Charles Schwab IRA account was funded with Wife's premarital shares from Amundi Pioneer. Thus, we disagree with the trial court's conclusion that Wife's Charles Schwab IRA account is entirely marital. *See Oaks v. Cooper*, 638 A.2d 208, 213 (Pa. 1994) (only the interest from the initial [non-marital] contribution can be realized as an asset available for equitable distribution).

Having concluded that the trial court erred in determining that Wife's entire Charles Schwab IRA account was subject to equitable distribution, we

vacate the equitable distribution award and remand for the calculation of the marital portion of the account. We further note:

> The Divorce Code does not specify a particular method of valuing assets. Thus, the trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties. When determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property. **Where the evidence offered by one party is uncontradicted, the court may adopt this value even though the resulting valuation would have been different if more accurate and complete evidence had been presented. A trial court does not abuse its discretion in adopting the only valuation submitted by the parties.**

*Childress v. Bogosian*, 12 A.3d 448, 456 (Pa. Super. 2011) (emphasis added; citations, brackets and quotation marks omitted).

In this case, Wife submitted as evidence a statement from Amundi Pioneer Asset Management, valuing her shares at $20,533.37 as of June 15, 2007. Husband did not rebut that value during cross-examination or admit any evidence regarding the value of Wife's premarital portion of her Charles Schwab IRA account. Accordingly, upon remand, we direct the trial court to exclude, at a minimum, the $20,533.37 premarital Amundi Pioneer funds, when calculating the marital portion of Wife's Charles Schwab IRA account.

In her second issue, Wife assails the trial court's overall distribution of the marital estate. The Master's Report and Recommendation, as adopted by the trial court, awarded 54% of the marital estate to Wife, and 46% of the marital estate to Husband. Wife argues:

The parties enjoyed an upper middle-class lifestyle and were able to live in nice dwellings and enjoy many events in which the children were active. Husband continues to reside in a big house on a golf course. Wife took up residence in an old small house to be close to her parents and be able to afford a home. Husband is a commissioned salesman whose income will increase exponentially. Wife is largely dependent upon child support and spousal support. If Wife worked more hours or evenings, child care providers would be necessary. Given the disparity in income and Husband's significant savings compared to Wife's, if the Master's Recommendation is accepted, Wife will be required to establish a new household and support herself and three (3) children with no significant financial asset to her name . . . .

Wife's Brief at 14-15.

In determining the propriety of an equitable distribution award, we consider the distribution scheme as a whole. Section 3502 of the Divorce Code provides, *inter alia*, that upon request from either party in a divorce action:

the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets.

23 Pa.C.S.A. § 3502(a). The factors relevant to the equitable division of marital property include:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

- 12 -

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

*Id.*

As noted, the trial court awarded 54% of the marital estate to Wife and 46% to Husband. Upon review of the record and prevailing law, we cannot agree with Wife that this award is economically unjust. The Master specifically discussed each and every factor to the extent they were applicable to the parties. The Master was aware of and commented on the contributions each

- 13 -

party made during the marriage, and the extent of their assets and future opportunities. Other than the error we identified regarding Wife's Charles Schwab IRA account, we discern no abuse of discretion in the 54/46 distribution of the marital estate.

Wife emphasizes that her childcare responsibilities and eight-year absence from the workforce limit her ability to obtain employment and greater income, and thus she should have received a larger percentage of the marital estate. The Master and trial court, however, disagreed, in part because they determined that Wife was capable of obtaining full-time employment as a registered nurse. As discussed *infra*, the Master specifically considered Wife's absence from the workforce and childcare responsibilities when formulating the equitable distribution and alimony awards. Upon review, we may not disturb credibility determinations, and consistent with prevailing legal authority, we find no merit to Wife's second issue as to the overall award of equitable distribution.

In her third, fourth and fifth issues, Wife contends the trial court erred in distributing the parties' Members 1st account $11,040.61 to Husband and $5,102.27 to Wife. Wife asserts that "Husband presented no evidence or testimony as to why he should be entitled to a larger share of the distribution of that account." Wife's Brief at 14. Wife further claims the trial court erred in failing to assign credit card debt to Husband "who is clearly in a superior position" to pay the debt, and challenges the trial court's failure to credit her for payments she made toward the parties' home equity line of credit

(HELOC). *Id.* at 18. Wife testified that she made eight payments of $61.54 toward the HELOC, and references Husband's hearing testimony that he did not make any payments toward the HELOC after separation. *Id.* at 18-19.

Wife's argument in support of these three issues mirrors her argument in support of her second issue challenging the overall distribution scheme. Since we have already determined that the trial court did not err in the overall award of equitable distribution, Wife's third, fourth and fifth issues are redundant, and subsumed by our prior review. We reiterate that in the context of equitable distribution, a trial court "has the authority to divide the award as the equities presented in the particular case may require." *Mercatell v. Mercatell*, 854 A.2d 609, 611 (Pa. Super. 2004) (citation omitted). As such, it was within the trial court's discretion to divide the parties' assets, with consideration of debts and payments, to effectuate equitable distribution. Wife's third, fourth and fifth issues do not warrant relief.

In her sixth issue, Wife claims the trial court "erred in crediting [Husband] with medical bills when there was no proof of payment. . . ." Wife's Brief at 19. In the argument section of her brief, however, Wife states, "[a]lthough Husband did provide statements of payments on those bills[,] the medical procedures correlated to the hospital bills occur[ing] during the marriage. Additionally, Husband was the sole wage earner of the family and should have been responsible for those payments." *Id.* at 19-20.

Wife argument is flawed because she first asserts that Husband failed to present evidence that he paid the medical bills he sought credit for, but then concedes that Husband did, in fact, provide proof of payment. In addition, Wife presents little argument, and cites no statutory authority or case law. In an appellate brief, parties must provide an argument as to each question, which should include a discussion and citation of pertinent authorities. Pa.R.A.P. 2119(a). "This Court is neither obliged, nor even particularly equipped, to develop an argument for a party. To do so places the Court in the conflicting roles of advocate and neutral arbiter. When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived." *Commonwealth v. B.D.G.*, 959 A.2d 362, 371–72 (Pa. Super. 2008) (*en banc*). Accordingly, we find Wife's sixth issue waived.

In her seventh issue, Wife contends the trial court erred in awarding her only $530.00 per month in alimony for one year following the divorce. Wife claims that since the parties separated, she has been "forced to secure employment and undertake expenses of renting a home and daily living needs for herself and the children while they are in her care." Wife's Brief at 16-17. She avers that "her commitment to raising" the children prevents her from working night shifts or at distances greater than 30 minutes. *Id.* at 16. Thus, because Wife's standard of living "has been 'cut' drastically" by the divorce, "$530.00 per month is not enough to assist her with monthly bills and child-related expenses." *Id.* at 17.

Our standard of review regarding questions pertaining to the award of alimony is whether the trial court abused its discretion. We previously have explained that the purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.

*Teodorski v. Teodorski*, 857 A.2d 194, 200 (Pa. Super. 2004).

Section 3701(b) of the Divorce Code states:

In determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony, the court shall consider all relevant factors, including:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

- 17 -

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S.A. § 3701(b). "To determine whether alimony is necessary and to establish the appropriate nature, amount, and duration of any alimony payments, the court is required to consider all relevant factors, including the 17 factors that are expressly mandated by statute." *Lawson v. Lawson*, 940 A.2d 444, 447 (Pa. Super. 2007). We note the factors in Section 3701(b) do

not create an exhaustive list.  ***Ressler v. Ressler***, 644 A.2d 753 ([Pa. Super.]

1994).

After reciting the Section 3701(b) factors, the Master recommended

Husband pay $530 per month in alimony for one year following the parties'

divorce.  The Master reasoned:

> [D]espite Wife receiving 54% of the marital estate, Wife is still in
> a position in which she needs additional support to maintain her
> monthly expenses.  The master has determined that Wife will be
> unable to meet her reasonable needs until at least 1/1/2020, and
> even after that, will need a buffer against the potential costs of
> health insurance and retirement contributions.  As mentioned
> earlier, Wife will be in need of an additional $530 to meet her
> personal expenses, but the master believes this award should be
> extended to counteract those above additional expenses.
> Therefore, it is the recommendation of the master that Wife
> receive alimony in the amount of $530 per month for a period of
> one (1) year commencing with the finalization of the divorce.

Report and Recommendation of the Master, 10/31/19, at 19-20.

In determining the amount of alimony, the Master found Wife's budget

to lack credibility.  Wife's monthly expenses far exceeded her income.  Her

monthly expenditures totaled $5,552.00, including $541 for fuel, $1,252.00

in grocery expenses, and $330 for clothing.  The Master approximated Wife's

monthly expenses to be $3,133.00, a figure that comported with the parties'

standard of living during the marriage.  From this figure, the Master arrived

at the monthly alimony amount of $530.

Again, upon review of the record, we discern no error.  At the hearing,

Wife introduced an expense statement that neither the Master nor the trial

court found credible.  N.T., 9/20/19, at Df.'s Ex. 16.  The Master recognized

that Wife's expenses far exceeded her income. Both the Master and trial court acted within their discretion in crediting the testimony of Husband regarding the parties' standard of living and consistent with that testimony, assessing Wife's reasonable needs. "A master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." **Childress** 12 A.3d at 455-56. Further, and in regard to witness credibility, "[i]t is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence." **Id.** Here, the findings of the Master and trial court are supported by the record, and refute Wife's seventh issue.

In her eighth and ninth issues, Wife argues that the trial court erred by assigning her an annual earning capacity of $53,500. Wife avers that the earning capacity belies the evidence presented at trial, and is impossible given her child care responsibilities. Wife's Brief at 21.

"A person's earning capacity is defined not as an amount which the person could theoretically earn, but as that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training." **Gephart v. Gephart**, 764 A.2d 613, 615 (Pa. Super 2000). Past earnings alone are not sufficient to support a determination of earning capacity without corroborating evidence that the party still has the capacity to earn that amount. **See D.H. v. R.H.**, 900 A.2d

922 (Pa. Super. 2006) (holding trial court erred in determining earning capacity based solely upon party's most recent tax return).

The Pennsylvania Rules of Civil Procedure address earning capacity as follows:

> If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(4).

In the companion case docketed at 1564 MDA 2019, Wife raised this identical issue. We declined to review Wife's claim, concluding that Wife failed to timely challenge the assignment of her earning capacity. *See **J.C.F. v. P.B.F.***, 1564 MDA 2019, at *7 (Pa. Super. Oct. 2, 2020) (unpublished memorandum). In particular, this Court noted that the trial court assigned Wife's earning capacity on February 28, 2018, following a Special Support Hearing, and although the order was appealable, Wife did not appeal. *Id.* at 8. Consistent with that disposition, we reject Wife's eighth issue as to earning capacity.

Finally, in her tenth issue, Wife contends the trial court erred in overlooking her healthcare costs. Wife's entire argument on this issue reads follows:

> Husband testified during the Master's Hearing that a health insurance policy for just himself would cost $75.00 per month as an insurance sales professional. He later testified that he currently pays $699.72 per month for health insurance for the entire family. Wife testified that health insurance is not offered for free at her current place of employment. Should she be forced to carry the three (3) children on her health insurance she would be forced to pay a fairly significant monthly amount, even if she were to find a 'cheap' rate. Given her monthly income and only $530 in alimony for one (1) year this would not be fair or practical, especially when Husband's monthly health insurance payment would be $75.00 by himself.

Wife's Brief at 23-24. We again note deficiencies in Wife's argument. Wife provides no citation to legal authority or otherwise develop a legal argument.

Nonetheless, we repeat that we will not usurp the role of factfinder, or disturb the fact finder's credibility determinations. *See Miller v. Miller*, 744 A.2d 778 (Pa. Super. 1999). Here, the Master noted that Wife failed to introduce evidence regarding her potential healthcare costs, and that any calculation of costs by the Master would be speculative. *See* Report and Recommendation of the Master, 10/31/19, at 18 ("The master has not been able to include any potential health insurance costs, as they were not provided by wife and therefore are speculative."). Despite Wife's failure to introduce evidence of her healthcare costs, the Master considered the additional support Wife would need to offset the additional cost of health insurance. *Id.* at 19 ("Wife . . . will need a buffer against the potential costs of health insurance

- 22 -

and retirement contributions."). On this record, we find Wife's final argument availing.

Order affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/26/2020